Todd C. Atkins (SBN 208879)
tatkins@atkinsdavidson.com
ATKINS & DAVIDSON, APC
2261 Rutherford Road
Carlsbad, CA 92008
Tel: 619.665.3476

Matthew M. Wawrzyn (*pro hac vice* pending)
*matt@wawrzynlaw.com*
WAWRZYN LLC
200 East Randolph Street, Suite 5100
Chicago, IL 60601
Tel:  312.235.3120
Fax: 312.233.0063

*Attorneys for Plaintiff
Cooperative Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COOPERATIVE ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> KOLLECTIVE TECHNOLOGY, INC., <br><br> Defendant. | Case No. 5:20-cv-07273-EJD <br><br> **AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |

## Nature of the Action

As computer networks grow, in strength and numbers, users sharing digital content on these networks also grows. Capacity is a problem that persists in the field of sharing digital content over computer networks. Sharing large files fast is possible, but it is expensive and taxes scare computer network capacity.

One broad solution to the capacity problem has been peer-to-peer ("P2P") network sharing. In simple terms, a client receives digital content and then serves the content to another client, its peer. In prior P2P networks, a content distribution network ("CDN") managed and controlled distribution, pushing content "top down" from the CDN to the P2P network.

A company called Joosy Inc. was founded in 2012 by Juan Benito, Jason Bradicich, Bill Gibson and Whitney Row in Raleigh, North Carolina. Joosy sought to improve the delivery of online video. Joosy created a product called JoosyCloud, which lowered the cost of online video delivery and improved the end-user experience.

Joosy also obtained a patent covering its system and method—which allowed a user to stream video over a P2P network outside the structure and control of a CDN. Joosy offered a decentralized content sharing network, where the network was dynamic and formed around each member of the P2P network consuming the same content.

This case is about a Joosy competitor—Kollective—practicing the patented Joosy method and system.

## Parties

1.      Plaintiff Cooperative Entertainment, Inc. ("CEI") is a corporation organized under the laws of North Carolina with its principal place of business in Raleigh, North Carolina.

2.      Defendant Kollective Technology, Inc. ("Kollective") is a corporation organized under the laws of Delaware with its principal place of business in Bend, Oregon.

## Jurisdiction and Venue

3. This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court may exercise personal jurisdiction over Kollective. Kollective has a regular place of business located in this District; Kollective conducts continuous and systematic business in California and this District; and these patent infringement claims arise directly from Kollective's continuous and systematic activity in this District. In short, this Court's exercise of jurisdiction over Kollective would be consistent with the California long-arm statute and traditional notions of fair play and substantial justice.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b).

7. A red-line copy of this amended complaint is attached as "Exhibit A."

## Claim of Patent Infringement

### *Eligibility of U.S. Patent No. 9,432,452*

8. CEI is the exclusive owner of United States Patent No. 9,432,452 (the "'452 patent"), which is attached hereto as "Exhibit B."

9. The '452 patent is valid and enforceable. The '452 patent claims patent-eligible subject matter.

10. "The prior art fails to provide video streaming over P2P networks outside the structure and control of [Content Delivery Networks] CDNs" ('452, col. 3:35-36.) The patentee and the U.S. Patent Office reviewed the prior art that taught content delivery through peer-to-peer ("P2P") networks.

11. This prior art featured segmentation at a macro level, distributed CDNs that used "trace routes" as a tool to test pathways between and among the various computing devices that comprise a given network's architecture: "Weller's servers perform network traffic tests including traceroutes, pings, file downloads . . . to maintain network conditions." The novelty of the '452 patent, the patentee argued to the U.S. Patent Office, was that the claims use these means of testing to further segment the actual content being delivered: "Specifically, traceroute as a type of network traffic test in Weller does not suggest or indicate using trace route to segment requested content."

12. The U.S. Patent Office allowed the '452 patent claims because the claims contained the complete engineering required to deliver content through a P2P network segmented in the novel way discussed immediately above: "The prior arts of record, failed to disclose or suggest that the multiplicity of peer nodes of the dynamic peer-to-peer network consume the same content within a predetermined time and that the distribution of PTP content delivery is based on content segmentation and the content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round robin and other server side scheduling/resource allocation techniques . . . ."

13. The '452 patent discusses some of the benefits of this novel technique: "Peer nodes or content recipients of the same content provide for redirected content delivery among peer nodes (or users), thereby by-passing any established or static content delivery network (CDN); advantageously, this saves time, improves redundancy, and also reduces or eliminates costs for content delivery over the CDN for the peer nodes. The content delivery server further identifies those peer nodes that are in close proximity to each other and uses them to distribute content to each other to create more efficient content delivery thereby." ('452, col. 5:38-48.)

14. The '452 patent reversed the flow of distributed digital content. According to the prior art, the CDN server pushed the digital content from node to node. Inventively, the '452 patent derived "peerness" from common video content iteratively shared in segments throughout the P2P network: "The content recipients have a peerness established and/or defined by the common content they are receiving from the CDN server; the systems and methods automatically identify peer nodes receiving common content and create dynamic network communication connection for the peer nodes to transmit that common content to each other, rather than the content being directed from the CDN server directly to each recipient node." ('452 patent, col. 4:52-60.)

15. The '452 patent teaches a server side that one of ordinary skill in the art could program to store viewer information and the video content. ('452 patent, cols. 5:59-6-12; *see also id.*, cols. 7:63-8:5 & Fig. 1.)

16. Claim 13 of the '452 covers a method of grouping of clients based on the metric of Quality of Service, or QoS, "the step of determining grouping of clients having common content based upon . . . QoS . . . ." ('452, col. 12:19-22.) "Also, the systems and methods of the present invention . . . include implementation of dynamic peer-to-peer (P2P) network-based, IP-based communication among peer nodes, wherein the peerness of the peer nodes is defined by their common content."

17. "FIG. 14 is a schematic diagram of the invention illustrating use cases for a submit report function that further includes the steps of update QoS for stream source and log client performance." (*Id.*, col. 9:9-12.)

18. This is one example of the '452 patent using a prior art metric to implement the P2P segmented distribution. The '452 patent claims all require segmenting the digital content according to the trace routes. ('452, FIGS. 2-9 and accompanying disclosure at col. 8:6-32.)

Furthermore, each claim, standing alone, contains the necessary components that deliver the result of a virtual P2P sharing method and system.

19. For example, Claim 1 is, "A system for virtualized computing peer-based content sharing . . . ." ('452, col. 10:25-26.) "Virtualized" means creating another layer or environment: "The systems and methods of the present invention provide for harnessing the content recipient devices to aggregate or assemble intelligent functionality of the devices unassociated with the content receipt, including but not limited to computational storage and processing capacity of the content recipient devices in the P2P dynamic network, as in grid computing applications for massively parallel computation in addition to the P2P content distribution and redundancy of the online content distribution to receiving or recipient peer node devices." ('452, col. 9:54-63.) Claim 1, like all the claims, covers the virtual layer outside the control of the prior art distribution scheme pushed from the CDN.

20. The Claim 1 system includes the prior art backend: "content delivery server computer constructed and configured for electrical connection and communication via at least one communications network . . . ." ('452, col. 10:27-29.) Claim 1 also has the prior art P2P network, but then things become novel where "the multiplicity of peer nodes consume the same content within a predetermined time . . . [and the P2P network] is based on at least one trace route . . . ." (*Id.*, col. 10:30-37.)

21. Claim 1 is "virtualized": "the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network . . . ." ('452, col. 10:37-41.)

22. Claim 1's backend functions as follows: "content delivery server computer is operable to store viewer information, check content request, use the trace route to segment requested content, find peers, and return client-block pairs . . . ." ('452, col. 10:42-45; *see also*

| Amended Complaint for Patent Infringement | 6 | Case No. 5:20-cv-07273-EJD |

FIG. 1.) "[W]herein distribution of P2P content delivery . . . is based on content segmentation . . . based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques." (*Id.*, col. 10:46-54; see also FIGS. 3-8.)

23. JooseyCloud is a system that embodies the claims of the '452 patent. That is, the JooseyCloud source code practices the required elements of claims 1 and 5 of the '452 patent. In particular, and for example, the JooseyCloud source code executes the following: "[T]he content distributed via the peer nodes of the present invention does not establish the 'peerness' or the P2P connections is not physical location-dependent, control-dependent, or ownership-dependent; in other words, the peerness of peer nodes of the present invention are established by the commonality of the content consumed therebetween. The P2P distribution of content according to the systems and methods of the present invention provide for cached content at each peer node; there is no stored content among the peer nodes." ('452, col. 5:17-27.)

24. The problem that the '452 patent addresses is capacity. The patent claims are addressed to the solution—sharing video content through a dynamic network. This dynamic network is defined by the peer nodes consuming the same content.

25. When the network is defined by the content being consumed by the P2P network, as the '452 patent claims teach, the P2P network is decentralized and offloaded the general network. The benefit of this "bottom up" approach is manifold and generally directed to addressing the capacity problem. If control is passed to the P2P dynamic network, then capacity may be substantially addressed—and in some cases exclusively addressed—by the P2P dynamic network. In other words, the computing capacity of the client devices consuming the video content is leveraged and used to the maximum extent, according the '452 patent claims.

*Infringement of the '452 Patent*

26.     Kollective has been and is directly infringing claims of the '452 patent. Kollective makes, uses, sells, and offers for sale methods and services that practice and embody claims of the '452 patent—including but not limited to Kollective SD ECDN. As discussed below, Kollective infringes the '452 patent, *inter alia*, when Kollective delivers video content for organizations (i.e., Kollective's clients) using Microsoft "Teams" software in conjunction with Kollective's software, firmware, and hardware. In this example, the Kollective application working with the Microsoft software is referred to as the Kollective app.

27.     Without limiting the claims that will be asserted or the products and services that will be accused of infringement in this action, Kollective is infringing Claim 5 of the '452 patent.

28.     Claim 5 is a "method for virtualized computing peer-based content sharing . . . ." (Ex. A, 10:62-63.) Kollective SD ECDN practices each step of Claim 5 as follows below. SD ECDN as a whole embodies the "method for virtualized computing peer-based content sharing." SD ECDN is virtualized, because SD ECDN is a conceptual hub that distributes digital content outside of the CDN included in the network. SD ECDN is a method of peer-based content sharing, using a collection or collections of clients to distribute digital content.

29.     Claim 5's method includes "providing at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network . . . ." (Ex. A, 10:64-67.) "The Kollective SD ECDN consists of a set of cloud-hosted control and origin servers and a small software agent deployed on employee devices throughout the company. The central servers and agents collectively form an adaptive, distributed content delivery and caching system to ensure that upwards of 99% of content is delivered via controlled, localized, east-west traffic instead of across the more constrained wide-area and internet gateway links often referred to as north-south traffic. SD ECDN technology leverages

existing infrastructure, notably storage and network bandwidth on end-user devices. It is extremely secure and delivers content via a multi-layered crypto-protected mesh that dynamically adapts to network and other consequential changes." www.kollective.com/wp-content/uploads/2017/10/Kollective_Control_Adapt_WP-122116.pdf. When Kollective provides a client organization the service of a company-wide keynote address of the "state of the organization," Kollective deploys the Kollective app and Kollective provides the content delivery server claimed in the '452 patent.

Claim 5's method also includes "providing at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes constructed and configured for electronic communication over the at least one P2P dynamic network, wherein the multiplicity of peer nodes consume the same content within a predetermined time, wherein the at least one P2P dynamic network is based on at least one trace route, wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network . . . ." (Ex. A, 11:1-11.) "SD ECDN's *adapt* mechanisms are a key driver of the solution's success in a multivariate network environment. With dynamic peer quality adapting to network bandwidth throttle impacts, the system is able to thrive and deliver. . . ." www.kollective.com/wp-content/uploads/2017/10/Kollective_Control_Adapt_WP-122116.pdf. "The agents in the mesh are constantly aware of their network surroundings. Utilizing pings and traceroutes, they gather key information about the surrounding network by monitoring the location of other agents and constantly gauging how local area links are performing." *Id.* "For live streaming, the mesh should be somewhat aggressive in the way it sources content from peers and the way it competes for bandwidth. Agent settings can be set accordingly for those use cases. VoD is different, for response time is not as critical and viewer sensitivity to launch delay is reduced. For this use case, the mesh may be configured to optimize on a different outcome such

as to allow a given content request to reach further out into the network to identify other endpoints that have the needed content, thus expanding the universe of good content sources. Other settings can be put in place to force the mesh to be more respectful to network traffic and more passive with regards to bandwidth contention. Lastly, when using subscriptions or proactive content targeting to pre-deliver content, the mesh should be set to be more passive. Efforts to pre-position content are typically made with plenty of lead time and are often launched overnight from their geography of origin. In these cases, the mesh may reach as widely as possible to maximize the use of east/west traffic to deliver content while allowing little to no contention on the north/south routes. The Kollective SD ECDN is powerful in its ability to perform specific actions as governed by the use case and ensure that the mesh attains the desired balance of performance and network load." *Id.*

Kollective provides a dynamic P2P network. For example, a company is a client of Kollective. This company would like to deliver a company-wide broadcast of the company's CEO delivering a "state of the company" address. Kollective provides the Kollective app to all of the client company's computers and hand held devices. Through the Kollective app, Kollective forms a dynamic network among the devices that will consume the corporate-wide broadcast of the company CEO.

30.  Claim 5: "the at least one content delivery server computer receiving at least one content request from a client . . . ." (Ex. A, 11:12-13.) "Network administrators can set how widely a specific group of agents is allowed to look for effective peers for the specific content item requested."

www.kollective.com/wpcontent/uploads/2017/10/Kollective_Control_Adapt_WP-122116.pdf.

31.  Claim 5 continues, "the at least one content delivery server computer segmenting requested content based on CDN address resolution, trace route to CDN and the P2P server

manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, and other server side scheduling/resource allocation techniques . . . ." (Ex. A, col. 11:14-20.) "Device management settings that maintain the balance between increased performance and prevention of adverse impact to resources across all elements of the system." *Id.* "The connection between one network device to the next is called a hop. The number of such hops, known as a hop count, is a measure of the network distance between two devices and has a bearing on latency. Setting the peering rules to include hop counts and/or latency gives control over how the mesh behaves while still allowing for it to optimize within the boundaries of the established rules. In most cases, the system uses both hop counts (number of network switching or gateway points traversed on a specific path to content peers) and latency configurations together. Network administrators can set how widely a specific group of agents is allowed to look for elective peers for the specific content item requested. The hop count method approximates whether an agent can peer from the LAN or not. Peering within 3 or 4 hops is usually within a LAN environment, so allowing higher hop counts typically means an agent will peer across a WAN segment which, in most cases, is not desirable. The latency method consists of measuring round-trip speeds. Latency can also be a good proxy for distance in a network topology, as not all hops are created equal. Determinations can be made as to whether a given agent is allowed to act as a content source and how many sources are allowed to be active servers to an agent. By limiting the maximum allowed bandwidth for downloading and serving, network administrators control the agent's use of network resources. Many factors influence these bandwidth limits, and these are governed by the highest priority asset being downloaded. These factors allow the agent to aggressively stream live and on-demand content at the same bitrate. Bandwidth limits are disabled by default so that the agent may run unfettered except when throttling is deemed necessary as a result of user activity, or to avoid network congestion." *Id.*

32. Claim 5 continues, "automatically identifying at least one peer node having at least one segment of the requested content in close network proximity to the client . . . ." (Ex. A, col. 11:22-24.) "The hop count method approximates whether an agent can peer from the LAN or not." *Id.* Claim 5 concludes, "at least one peer node most proximal to the client sharing the at least one segment of the requested content." (Ex. A, col. 11:24-25.) "Peering within 3 or 4 hops is usually within a LAN environment, so allowing higher hop counts typically means an agent will peer across a WAN segment which, in most cases, is not desirable." *Id.* When Kollective's client delivers its corporate-wide address, the address is streamed video content delivered to a dynamic P2P network comprising the company devices consuming the content.

33. Kollective makes, uses, and sells the system claimed in claim 1 of the '452 patent. Claim 1 provides, "A system for virtualized computing peer-based content sharing comprising: at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network; and at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes, wherein the multiplicity of peer nodes consume the same content within a predetermined time, wherein the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network, wherein the at least one P2P dynamic network is based on at least one trace route; wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network; wherein the at least one content delivery server computer is operable to store viewer information, check content request, use the trace route to segment requested content, find peers, and return client-block pairs; wherein distribution of P2P content delivery over the at least one P2P dynamic network is based on content segmentation; wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers

reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques." (Ex. A, col. 10:25-54.)

34. When Kollective provides a client organization the service of a company-wide keynote address of the "state of the organization," Kollective deploys the Kollective app and Kollective provides the content delivery server claimed in the '452 patent. Kollective provides a dynamic P2P network. For example, a company is a client of Kollective. This company would like to deliver a company-wide broadcast of the company's CEO delivering a "state of the company" address. Kollective provides the Kollective app to all of the client company's computers and hand held devices. Through the Kollective app, Kollective forms a dynamic network among the devices that will consume the corporate-wide broadcast of the company CEO.

35. SD ECDN is "[a] system for virtualized computing peer-based content sharing . . . ." (Ex. A, col. 10:25-26.) SD ECDN is virtualized, because SD ECDN is a conceptual hub that distributes digital content outside of the CDN included in the network. SD ECDN is a system of peer-based content sharing, using a collection or collections of clients to distribute digital content.

36. SD ECDN includes the claimed server component. "The Kollective SD ECDN consists of a set of cloud-hosted control and origin servers and a small software agent deployed on employee devices throughout the company. The central servers and agents collectively form an adaptive, distributed content delivery and caching system to ensure that upwards of 99% of content is delivered via controlled, localized, east-west traffic instead of across the more constrained wide-area and internet gateway links often referred to as north-south traffic. SD ECDN technology leverages existing infrastructure, notably storage and network bandwidth on end-user devices. It is extremely secure and delivers content via a multi-layered crypto-protected mesh that dynamically adapts to network and other consequential changes." www.kollective.com/wp-content/uploads/2017/10/Kollective_Control_Adapt_WP-122116.pdf.

37. SD ECDN includes the P2P dynamic network, as claimed in claim 1: "SD ECDN's *adapt* mechanisms are a key driver of the solution's success in a multivariate network environment. With dynamic peer quality adapting to network bandwidth throttle impacts, the system is able to thrive and deliver. . . ." www.kollective.com/wp-content/uploads/2017/10/Kollective_Control_Adapt_WP-122116.pdf.

38. SD ECDN's backend includes the functionality claimed in the '452 system and method: "Device management settings that maintain the balance between increased performance and prevention of adverse impact to resources across all elements of the system." *Id*. "The connection between one network device to the next is called a hop. The number of such hops, known as a hop count, is a measure of the network distance between two devices and has a bearing on latency. Setting the peering rules to include hop counts and/or latency gives control over how the mesh behaves while still allowing for it to optimize within the boundaries of the established rules. In most cases, the system uses both hop counts (number of network switching or gateway points traversed on a specific path to content peers) and latency configurations together. Network administrators can set how widely a specific group of agents is allowed to look for elective peers for the specific content item requested. The hop count method approximates whether an agent can peer from the LAN or not. Peering within 3 or 4 hops is usually within a LAN environment, so allowing higher hop counts typically means an agent will peer across a WAN segment which, in most cases, is not desirable. The latency method consists of measuring round-trip speeds. Latency can also be a good proxy for distance in a network topology, as not all hops are created equal. Determinations can be made as to whether a given agent is allowed to act as a content source and how many sources are allowed to be active servers to an agent. By limiting the maximum allowed bandwidth for downloading and serving, network administrators control the agent's use of network resources. Many factors influence these bandwidth limits, and

these are governed by the highest priority asset being downloaded. These factors allow the agent to aggressively stream live and on-demand content at the same bitrate. Bandwidth limits are disabled by default so that the agent may run unfettered except when throttling is deemed necessary as a result of user activity, or to avoid network congestion." *Id.*

39. The SD ECDN distribution is based on content segmentation, as set forth the claim 1 system: "The agents in the mesh are constantly aware of their network surroundings. Utilizing pings and traceroutes, they gather key information about the surrounding network by monitoring the location of other agents and constantly gauging how local area links are performing." *Id.* "For live streaming, the mesh should be somewhat aggressive in the way it sources content from peers and the way it competes for bandwidth. Agent settings can be set accordingly for those use cases. VoD is different, for response time is not as critical and viewer sensitivity to launch delay is reduced. For this use case, the mesh may be configured to optimize on a different outcome such as to allow a given content request to reach further out into the network to identify other endpoints that have the needed content, thus expanding the universe of good content sources. Other settings can be put in place to force the mesh to be more respectful to network traffic and more passive with regards to bandwidth contention. Lastly, when using subscriptions or proactive content targeting to pre-deliver content, the mesh should be set to be more passive. Efforts to pre-position content are typically made with plenty of lead time and are often launched overnight from their geography of origin. In these cases, the mesh may reach as widely as possible to maximize the use of east/west traffic to deliver content while allowing little to no contention on the north/south routes. The Kollective SD ECDN is powerful in its ability to perform specific actions as governed by the use case and ensure that the mesh attains the desired balance of performance and network load." *Id.* When Kollective's client delivers its corporate-wide address, the address is streamed video content delivered to a dynamic P2P network comprising the

company devices consuming the content.

40. SD ECDN infringes claim 2 of the '452 patent, as the system is capable of large file distribution and sharing. "For live streaming, the mesh should be somewhat aggressive in the way it sources content from peers and the way it competes for bandwidth. Agent settings can be set accordingly for those use cases. VoD is different, for response time is not as critical and viewer sensitivity to launch delay is reduced. For this use case, the mesh may be configured to optimize on a different outcome such as to allow a given content request to reach further out into the network to identify other endpoints that have the needed content, thus expanding the universe of good content sources. Other settings can be put in place to force the mesh to be more respectful to network traffic and more passive with regards to bandwidth contention. Lastly, when using subscriptions or proactive content targeting to pre-deliver content, the mesh should be set to be more passive. Efforts to pre-position content are typically made with plenty of lead time and are often launched overnight from their geography of origin. In these cases, the mesh may reach as widely as possible to maximize the use of east/west traffic to deliver content while allowing little to no contention on the north/south routes. The Kollective SD ECDN is powerful in its ability to perform specific actions as governed by the use case and ensure that the mesh attains the desired balance of performance and network load." *Id.*

41. Kollective infringes claim 3, because the P2P connection is provided because of content commonality. "The connection between one network device to the next is called a hop. The number of such hops, known as a hop count, is a measure of the network distance between two devices and has a bearing on latency. Setting the peering rules to include hop counts and/or latency gives control over how the mesh behaves while still allowing for it to optimize within the boundaries of the established rules. In most cases, the system uses both hop counts (number of network switching or gateway points traversed on a specific path to content peers) and latency

configurations together. Network administrators can set how widely a specific group of agents is allowed to look for elective peers for the specific content item requested." *Id.*

**Prayer for Relief**

WHEREFORE, CEI prays for the following relief against Kollective:

(a)  Judgment that Kollective has directly infringed the '452 patent;

(b)  For a fair and reasonable royalty;

(c)  For pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

(d)  For such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

CEI demands a trial by jury on all matters and issues triable by jury.

Date: February 5, 2021

/s/ Todd C. Atkins
Todd C. Atkins (SBN 208879)
tatkins@atkinsdavidson.com
ATKINS & DAVIDSON, APC
2261 Rutherford Road
Carlsbad, CA 92008
Tel: 619.665.3476

Matthew M. Wawrzyn (*pro hac vice* pending)
matt@wawrzynlaw.com
WAWRZYN LLC
200 East Randolph Street, Suite 5100
Chicago, IL 60601
Telephone:  312.235.3120

*Attorneys for Plaintiff*
*Cooperative Entertainment, Inc.*