MICHAEL S. DOWLER, TX SBN 00783979 (*pro hac vice*)
Email:  mike@parklegal.com
PARK, VAUGHAN, FLEMING & DOWLER, LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
Telephone:  (713) 821-1540
Facsimile:  (713) 821-1401

MICHAEL W. STEBBINS, SBN 138326
Email:  mws@svlg.com
STEPHEN S. WU, SBN 205091
Email:  ssw@svlg.com
MARC G. VAN NIEKERK, SBN 201329
Email:  mvn@svlg.com
**SILICON VALLEY LAW GROUP**
1 North Market Street, Suite 200
San Jose, CA 95113
Telephone:  408) 573-5700
Facsimile:   (408) 573-5701

Attorneys for Defendant
KOLLECTIVE TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| COOPERATIVE ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> KOLLECTIVE TECHNOLOGY, INC., <br><br> Defendant. | Case No. 3:20-cv-07273-EJD <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)** <br><br> Date:      May 6, 2021 <br> Time:     9:00 a.m. <br> Place:     Courtroom 4, 5th Floor |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 6, 2021, at 9:00 a.m., or as soon thereafter as the motion may be heard in the courtroom of The Honorable Edward J. Davila, located at Robert F. Peckham Federal Building & United States Courthouse, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California 95113, Defendant Kollective Technology, Inc. ("Kollective") will and hereby does move for dismissal with prejudice of all claims in Plaintiff Cooperative Entertainment, Inc.'s ("CEI's") Amended Complaint for Patent Infringement (Dkt. No. 18) pursuant to Federal Rule of Civil Procedure 12(b)(6).

There are two bases for the motion. First, the Amended Complaint fails to state a claim upon which relief can be granted because the claims of U.S. Patent No. 9,432,452 ("the '452 patent") are invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. Second, the Amended Complaint fails to properly plead its infringement claims under the prevailing *Twombly/Iqbal* pleading standard.

Kollective requests that the Court find each claim of the '452 patent invalid and dismiss the Amended Complaint with prejudice. Alternatively, Kollective requests that the Amended Complaint be dismissed with prejudice as inadequate under the relevant pleading standards.

This Motion is based upon this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Stephen S. Wu, filed concurrently herewith, and the pleadings and papers filed herein.

Date:  February 19, 2021

Respectfully submitted,

SILICON VALLEY LAW GROUP

*/s/ Stephen S. Wu*
Stephen S. Wu

Attorneys for Defendant
KOLLECTIVE TECHNOLOGY, INC.

# TABLE OF CONTENTS

**Page(s):**

I.    SUMMARY OF THE ARGUMENT……………………………………………1

II.   STATEMENT OF THE FACTS……………………………………………2

III.  LEGAL STANDARDS…………………………………………………5

    A.    Legal Standard for Dismissal Pursuant to Rule 12(b)(6)…………………………...5

        1.    This case should be disposed of at the pleading stage via Federal Rule 12(b)(6)……………………………………………5

        2.    The Law of 35 U.S.C. § 101………………………………………...6

        3.    The *Twombly/Iqbal* Pleading Standard in Patent Cases…………………7

IV.  ARGUMENT…………………………………………………………8

    A.    The '452 Patent is Invalid Under 35 U.S.C. § 101………………………………8

        1.    *Alice* Step 1:  Claim 1 of the '452 patent is directed to the abstract idea of preparing content for sharing over a computer network………………………………………………………...8

        2.    *Alice* Step 2:  Claim 1 of the '452 patent contains no inventive concept sufficient to transform the abstract idea into patent-eligible matter……………………………………………..14

        3.    The remaining claims of the '452 patent fail both steps of *Alice*……………………………………………………17

    B.    The Amended Complaint Should Alternatively be Dismissed for Failing to Meet the *Twombly/Iqbal* Pleading Standard for Patent Cases……….19

        1.    '452 Patent, Claim 1……………………………………………19

        2.    '452 Patent, Claims 2-3…………………………………………21

        3.    '452 Patent, Claim 5……………………………………………22

V.    CONCLUSION………………………………………………………25

1

## TABLE OF AUTHORITIES

2

Page(s):

3

__Federal Cases:__

4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
573 U.S. 208 (2014)……………………………………………………6, 8, 14, 15, 16, 17, 18

5

*Ancora Technologies, Inc. v. HTC America, Inc.*
908 F. 3d 1343 (Fed. Cir. 2018)…………………………………………………………14

6

7

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)…………………………………………1, 5, 7, 8, 19, 20, 21, 22, 23, 25

8

9

*Atlas IP LLC v. Exelon Corp.*
2016 WL 2866134 (N.D. Ill. May 17, 2016)……………………………………………21

10

11

*Atlas IP LLC v. Pacific Gas and Electric Co.*
2016 WL 1719545 (N.D. Cal. Mar. 9, 2016)…………………………………………7, 19

12

13

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*
687 F. 3d 1266 (Fed. Cir. 2012)……………………………………………………6, 17

14

15

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007)………………………………………1, 7, 19, 20, 21, 22, 23, 25

16

17

*Berkheimer v. HP Inc.*
881 F. 3d 1360 (Fed. Cir. 2018)……………………………………………………16, 17

18

*Bilski v. Kappos*
561 U.S. 593 (2010)………………………………………………………………6, 7, 8

19

20

*buySAFE, Inc. v. Google, Inc.*
765 F. 3d 1350 (Fed. Cir. 2014)…………………………………………………………17

21

22

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*
21 F. Supp. 3d 758 (E.D. Tex. 2014)……………………………………………………18

23

24

*Content Extraction and Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*
776 F. 3d 1343 (Fed. Cir. 2014)…………………………………………8, 9, 12, 13, 17

25

*Cuvillier v. Taylor*
503 F. 3d 397 (5th Cir. 2007)………………………………………………………....6

26

27

*CyberSource Corp. v. Retail Decisions, Inc.*
654 F. 3d 1366 (Fed. Cir. 2011)…………………………………………………………7

28

Defendant's Motion to Dismiss
Amended Complaint

- ii -

Case No. 3:20-cv-07273-EJD

**Page(s):**

*DDR Holdings, LLC v. Hotels.com, L.P.*
 773 F. 3d 1245 (Fed. Cir. 2014)…………………………………………………………15

*Diamond v. Chakrabarty*
 447 U.S. 303 (1980)…………………………………………………………………………6

*Diamond v. Diehr*
 450 U.S. 175 (1981)…………………………………………………………………………7

*e.Digital Corp. v. iBaby Labs, Inc.*
 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016)……………………………………………..7, 19

*Enfish, LLC v. Microsoft Corp.*
 822 F. 3d 1327 (Fed. Cir. 2016)……………………………………………………...15, 16

*Fort Props., Inc. v. Am. Master Lease LLC*
 671 F. 3d 1317 (Fed. Cir. 2012)……………………………………………………………7

*Genetic Techs. Ltd. v. Merial L.L.C.*
 818 F. 3d 1369 (Fed. Cir. 2016)…………………………………………………………...6

*Gottschalk v. Benson*
 409 U.S. 63 (1972)…………………………………………………………………………..6

*In re TLI Comm. LLC Patent Litig.*
 823 F. 3d 607 (Fed. Cir. 2016)……………………………………………………...12, 13, 16

*Intellectual Ventures I LLC v. Capital One Bank U.S.A.*
 792 F. 3d 1363 (Fed. Cir. 2015)…………………………………………………………..17

*Internet Patents Corp. v. Active Network, Inc.*
 790 F. 3d 1343 (Fed. Cir. 2015)…………………………………………………………..12, 13

*Laitram Corp. v. Rexnord, Inc.*
 939 F. 2d 1533 (Fed. Cir. 1991)…………………………………………………………..21

*Lee v. City of Los Angeles*
 250 F. 3d 668 (9th Cir. 2001)……………………………………………………………...5

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*
 566 U.S. 66 (2012)………………………………………………………………………..7

*Novitaz, Inc. v. InMarket Media, LLC*
 2017 WL 2311407 (N.D. Cal. May 26, 2017)…………………….......2, 19, 20, 21, 22, 23, 24, 25

**Page(s):**

*Parker v. Flook*
  437 U.S. 584 (1978)……………………………………………………………………7

*PersonalWeb Tech. LLC v. Google LLC*
  2020 WL 520618 (N.D. Cal. January 31, 2020),
  *appeal filed*, No. 20-1543 (Mar. 6, 2020……………………………….………...1, 2, 13, 16

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*
  2017 WL 1065938 (E.D. Tex. Mar. 8, 2017)………………………………………..8, 9

*PlanetID, LLC v. Digify, Inc.*
  Civil Action No. 19-cv-04615-JST (N.D. Cal. Jan. 12, 2021)………………………..1, 13

*SAP Am., Inc. v. InvestPic, LLC*
  898 F. 3d 1161 (Fed. Cir. 2018)……………………………………………………..9

*Secure Cam, LLC v. Tend Insights, Inc.*
  351 F. Supp. 3d 1249 (N.D. Cal. 2018)……………………………………………..9

*Sipco, LLC, IP Co., LLC v. Streetline, Inc.*
  2017 WL 10795601 (D. Del. Jun. 21, 2017)…………………………………….....25

*Ultramercial, Inc. v. Hulu, LLC*
  772 F. 3d 709 (Fed. Cir. 2014)……………………………………………….13, 14

*Victaulic Co. v. Tieman*
  499 F. 3d 227 (3rd Cir. 2007)………………………………………………………..5

*VideoShare, LLC v. Google, Inc.*
  2016 WL 4137524 (D. Del. Aug. 2, 2016……………………………………1, 10, 11, 13

*Wahpeton Canvas Co. v. Frontier, Inc.*
  870 F. 2d 1546 (Fed. Cir. 1989)……………………………………………………22


**Federal Statutes:**

35 U.S.C. § 101…………………………………………………...2, 6, 8, 13, 14, 17

Fed. R. Civ. Pro., Rule 12(b)(6)………………………………………………………5, 8

Fed. R. Civ. Pro., Rule 15(a)……………………………………………………………2

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      SUMMARY OF THE ARGUMENT**

3

4

Kollective previously moved to dismiss (Dkt. No. 17) CEI's original Complaint, to which

5

CEI responded by filing an Amended Complaint (Dkt. No. 18).   Kollective responded by

6

withdrawing its original motion and filing this motion.   This motion shows the Amended

7

Complaint should be dismissed for the same reasons articulated in Kollective's original motion.

8

First, the '452 patent does not embrace patent-eligible subject matter.  (*See* Declaration of

9

Stephen S. Wu, Ex. 1, '452 patent.[1])  The claims of the '452 patent are directed to the abstract

10

idea of preparing content for sharing over a computer network.   Courts—including this one—

11

repeatedly have found similar claims invalid in a Rule 12 context.  *See e.g., PersonalWeb Tech.*

12

*LLC v. Google LLC,* No. 5:13-cv-01317 (EJD), 2020 WL 520618 (N.D. Cal. Jan. 31, 2020)

13

(claims directed to distributing data across a content delivery network), *appeal filed*, No. 20-1543

14

(Fed. Cir. Mar. 6, 2020); *PlanetID, LLC v. Digify, Inc.,* No. 19-cv-04615 (JST) (N.D. Cal. Jan.

15

12, 2021) (claims directed to an information exchange system) (Ex. 3); *VideoShare, LLC v.*

16

*Google, Inc.*, No. 13-cv-990 (GMS), 2016 WL 4137524 (D. Del. Aug. 2, 2016) (claims directed

17

to preparing a video for sharing over a computer network).   The claims of the '452 patent cannot

18

be meaningfully distinguished from the *PersonalWeb, PlanetID,* or *VideoShare* claims and are,

19

thus, invalid for the same reasons.

20

21

Second, the Amended Complaint fails to plausibly plead patent infringement, as required

22

by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662

23

(2009).   There are no less than *two-dozen* separate instances in which the Amended Complaint

24

fails to allege that Kollective practices an element of an asserted patent claim, and any *one* of

25

26

[1] All exhibit references will be references to the accompanying Declaration of Stephen S. Wu.

27

28

those instances suffices to warrant dismissal, as this Court found in *Novitaz, Inc. v. InMarket Media, LLC,* No. 16-cv-06795 (EJD), 2017 WL 2311407, *3 (N.D. Cal. May 26, 2017) (a complaint should be dismissed when it "does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied").

Finally, this case should be dismissed with prejudice because: (1) CEI cannot change the '452 patent's subject matter; (2) CEI now has used its "one" opportunity under Fed. R. Civ. P. 15(a) to amend; and (3) the Amended Complaint still fails—in multiple respects—to plead a plausible case of patent infringement.

## II.   STATEMENT OF FACTS

The '452 patent is entitled "Systems and Methods for Dynamic Networked Peer-To-Peer Content Distribution." (Ex. 1, '452 patent.)  The asserted claims are generally directed to "[p]eer-to-peer (P2P) dynamic networks and/or sub-networks for file sharing between peers receiving the same content." (*Id.* at Abstract.)  This simple concept is illustrated in the '452 patent drawings. Figure 2 (reproduced below on the left) shows conventional peer computers "a"-"n" requesting a file segment (such as a segment/portion of a movie) from a conventional content delivery network ("CDN")[2].  (*Id.* at 8:6-32.)

 

Figure 3 (reproduced above on the right) shows peer "a" requesting the file segment that peers

---

[2] The Court may recall having some familiarity with CDNs since that was the subject matter of the '280 patent, which the Court recently found invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter.  *PersonalWeb,* No. 5:13-cv-01317 (EJD), 2020 WL 520618 (N.D. Cal. January 31, 2020) (granting Rule 12 motion).

"b"-"e" previously received from the CDN.  (*Id.*)  Figures 4-9 (not reproduced here) likewise show the various peers "b"-"n" requesting file segments from each other.  (*Id.*)  By sharing file segments among the various peers, the peers do not need to burden the network connection to the CDN in order to retrieve the entire file/movie—they simply collect the various segments of it from each other and reconstitute the segments into the file.  (*Id.* at 4:55-60; 5:30-48.)  Such per-to-peer sharing of data has been well known for decades (*id.* at 1:17-3:34); indeed, Kollective's corporate predecessors have been practicing P2P technology since 2000, and it has multiple patents that predate the '452 patent.

Claim 1 of the '452 patent, set forth below, is representative of the claims:

1.  A system for virtualized computing peer-based content sharing comprising:

at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network; and

at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes, wherein the multiplicity of peer nodes consume the same content within a predetermined time, wherein the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network, wherein the at least one P2P dynamic network is based on at least one trace route; wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network;

wherein the at least one content delivery server computer is operable to store viewer information, check content request, use the trace route to segment requested content, find peers, and return client-block pairs;

wherein distribution of P2P content delivery over the at least one P2P dynamic network is based on content segmentation;

wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques.

(*Id.* at Claim 1.)  This claim can be broken down into three main components: (1) a content delivery server computer, (2) a peer-to-peer (P2P) dynamic network, and (3) a content

distribution network (CDN), where the content delivery server is tasked with managing data sharing, and at least some P2P nodes are outside of the CDN and in communication with the content delivery server computer. Essentially, the '452 patent describes two sets of computer networks (a "CDN" and a "P2P" network), where "at least one content delivery server computer" acts as a controller and prepares the data for sharing. Put simply, these components are directed to preparing content for sharing over a computer network, using conventional computer components.

The patent applicant made clear through his own language in the specification that the components of the claimed system were conventional. For example, the claimed "content delivery server," "peer-to-peer dynamic network," and "content distribution network" can be virtually any server capable of sharing content files. (*Id.*, 1:17–20 ("Generally, it is known in the relevant prior art to provide peer-to-peer (P2P) networks via the internet for sharing digital content, including video, for live streaming service over content distribution networks (CDNs).").) The applicant provided several examples of prior art that clearly disclosed that the components and processes claimed in the patent were conventional. (*Id.*, 1:22-3:34.) The applicant further acknowledged that "no customized or proprietary software" is required for the system and "existing technologies and/or software" was available in the prior art to download peer content. (*Id.*, 5:64-67 ("no customized or proprietary software download to the peer node content recipient devices is required for the systems and methods of the present invention"); 5:66–6:5 ("[E]xisting technologies and/or software that may be used to download peer node content include either Adobe Flash or a combination of W3C standards WebRTC and MediaSource, along with modern web browsers like WebKit, Google Chrome, Apple Safari, Mozilla, and/or MS IE.").)

The applicant also did not provide any technical details on how the data sharing is

implemented beyond what was known in the prior art.  Instead, the applicant indicated that any conventional P2P network may be used to implement data sharing.  (*Id*., 3:40-44.)  The purported invention connects conventional P2P file sharing with conventional CDNs, where data sharing in the peer network is "outside a static network of controlled systems."  (*Id*., 3:57-58.)  A content delivery server computer connects these components together.  The content delivery server computer need only identify "peer nodes having content in common" and those nodes that are "in close network proximity to each other" to efficiently share data.  (*Id*., 5:33-48.)  Finally, the applicant made clear that the content delivery server need only be a generic computer, and it may even be one of the P2P nodes.  (*Id.*, 5:59-64 ("In one embodiment of the present invention, the systems and methods of the present invention may be integrated with applications (Apps) for mobile devices, including but not limited to smart phones, tablet computers, mobile computers, mobile communication devices, and the like, and combinations thereof.").)

## III.   LEGAL STANDARDS

### A.   Legal Standard for Dismissal Pursuant to Rule 12(b)(6)

#### 1.   This case should be disposed of at the pleading stage via Federal Rule 12(b)(6)

Under Federal Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007) (citation omitted).  In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint.  *See Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001)*.*  Although factual allegations are taken as true, legal conclusions are given no deference.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[W]hen the allegations in a complaint, however true, could not

raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

## 2.   The Law of 35 U.S.C. § 101

Patentability under 35 U.S.C. § 101 is a threshold legal issue.  *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter.  *Genetic Techs. Ltd. v. Merial L.L.C.,* 818 F.3d 1369, 1373 (Fed. Cir. 2016).  In those situations, claim construction is not required to conduct a § 101 analysis.  *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("claim construction is not an inviolable prerequisite to a validity determination under § 101").

Section 101 of the Patent Act sets forth four categories of patentable subject matter:  "any new and useful process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  The law also recognizes three exceptions to patent eligibility:  "laws of nature, physical phenomena, and **abstract ideas**."  *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields.  *See Bilski*, 561 U.S. at 611–12.  In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work."  *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps.  First, the court determines "whether the claims at issue are directed to a patent-ineligible concept."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'— *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice

amounts to significantly more than a patent upon the ineligible concept itself." *Id.*

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 218 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).  Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).  Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment.  *Mayo*, 566 U.S. at 74-75, 77-78; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978).  Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."  *Mayo*, 566 U.S. at 77; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

### 3.   The *Twombly/Iqbal* Pleading Standard in Patent Cases

Separate and apart from the patentability issue, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570.  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal,* 556 U.S. 662, 687 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  As this Court found in *Novitaz,* a complaint should be dismissed when it "does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied".  2017 WL 2311407, *3; *see also, e.Digital Corp. v. iBaby Labs, Inc.,* No. 15-cv-05790 (JST), 2016 WL

4427209, *3 (N.D. Cal. Aug. 22, 2016) (citing *Atlas IP LLC v. Pacific Gas and Electric Co.,* No. 15-cv-05469 (EDL), 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016) ("Simply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation of any asserted claim or addressing all of the claim requirements, is insufficient.")).

## IV.   ARGUMENT

### A.   The '452 Patent is Invalid Under 35 U.S.C. § 101

The claims of the '452 patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test.  Each of the patent claims is directed to the abstract idea of preparing content for sharing over a computer network.  Abstract ideas are not eligible for patenting.  None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to **significantly more** than a patent upon the ineligible concept itself."  *See Alice*, 573 U.S. at 216 (emphasis added).  Because CEI has failed to state a claim upon which relief may be granted, and CEI has already had a chance to amend its original Complaint, Kollective requests that the Court dismiss this case with prejudice.  Fed. R. Civ. P. 12(b)(6).

### 1.   *Alice* Step 1:  Claim 1 of the '452 patent is directed to the abstract idea of preparing content for sharing over a computer network

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea.  *Alice*, 573 U.S. at 216.  Under any plausible reading, the claims of the '452 patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of preparing content for sharing over a computer network.  *See Alice*, 573 U.S. 217-20; *Bilski*, 561 U.S. at 611.

1    Claim 1 of the '452 patent is representative of the claims.[3]  *See, e.g.*, *Phoenix Licensing,*

2  *L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D.

3  Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims"

4  where the other claims were "substantially similar" and "linked to the same abstract idea.").  In

5  assessing whether Claim 1 is directed to an abstract idea, the Court begins by analyzing the

6  "focus" of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is

7  directed to an abstract idea.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir.

8  2018); *Secure Cam, LLC v. Tend Insights, Inc.,* 351 F. Supp. 3d 1249, 1255 (N.D. Cal. 2018)

9  (Davila, J.) (granting Rule 12 motion to dismiss due to unpatentable subject matter).

10    At a high level, Claim 1 describes the most generic components and functionalities of a

11  computer (*i.e.*, storing information, checking content requests, segmenting data, identifying

12  servers, and returning result data).  Such a broad concept is not patent eligible because it

13  "recite[s] an abstraction—an idea, having no particular concrete or tangible form."  *Ultramercial*

14  *Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).  That the claim purports to implement the

15  steps with conventional components like a "content delivery server computer," a "peer-to-peer

16  dynamic network," and a "content distribution network" does not make it any less abstract.

17    The '452 patent specification admits that P2P networks for content sharing and CDNs

18  were prevalent at the time of the invention.  (Ex. 1, '452 patent, 1:17–20.)  Indeed, the claims

19  implement this prior art technology and merely add an additional computer, a "content delivery

20  server computer," that prepares content.  Claim 1 of the '452 patent does nothing more than use

21  existing technology to share the content, where the additional content delivery server computer

---

[3] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis.  *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1348 (Fed. Cir. 2014).

merely prepares the content for sharing by receiving content and executing functions in response to receiving the content.  One example is executing functions that convert the content into smaller pieces (*i.e.,* segments) and sharing them.  It is thus directed to the abstract idea of preparing content for sharing over a computer network.

Courts have found similar patent claims to be ineligible.  In *VideoShare*, Judge Sleet found claims directed to preparing a video in streaming video format for sharing over a computer network invalid under both *Alice* steps.  *VideoShare,* 2016 WL 4137524 at *5.  The representative claim at issue recited:

> 1.  A method of streaming a video to users over a network, the method comprising the steps of:
>
> receiving, by a receiving computer via a web page, a video file sent by a user on a second computer on a network;
>
> executing, by the receiving computer, in response to receiving the video file, an automated function automatically performing each of:
>
> > (b1) converting the video file into a streaming video file comprising a streaming video format, the video file being converted independent from receiving a command to perform such conversion from the user;
> >
> > (b2) generating an identification tag comprising a video frame image representing a subject matter of the streaming video file and identifying the streaming video file; and
> >
> > (b3) embedding the identification tag comprising the video frame image into a web page for serving the streaming video file to one or more users on one or more computers on the network.

*Id.* at *2.  The court found that "the claims are directed to an abstract idea because the claims are not directed to an improvement in computer functionality, and the physical components of the claim merely provide a generic environment for carrying out the abstract idea."  *Id.* at *11.  "VideoShare did not invent the technology that converts video files into streaming format," and "the specification does not disclose any specific algorithms or specific software code that carries out the file format conversion, nor do the claims recite the VideoShare software as part of the

invention." *Id.* at *12.  Because the claims did not result "in an improvement to computer functionality," and utilized "conventional technology so that a human is not burdened with various manual steps" in "a generic environment," the court concluded that the claims lacked an inventive concept. *Id*. at *13-14.

There are strong parallels between the language of the claims asserted here and the patent-ineligible claims in *VideoShare*.  For example, the representative claim in *VideoShare* recites, among other things, receiving a video file via a computer, executing functions, converting video files, generating an identification tag that identifies the video, and embedding the identification tag into a web page.  These claim limitations are similar to those in Claim 1 of the '452 patent, which recite, among other things, "stor[age of] viewer information," "check[ing] content request[s]," "us[ing a] trace route to segment requested content," "find[ing] peers," and "return[ing] client-block pairs."  Each of these limitations is quite similar.  For example, "stor[ing] viewer information" is similar to "receiving" a file, "executing functions" is similar to "check[ing] content request[s]," "converting" files is similar to "us[ing a] trace route to segment requested content," and "generating" and "embedding" identification tagged videos is similar to "find[ing] peers" and "return[ing] client-block pairs."

Claim 1 of the '452 patent recites conventional features without a restriction on how the result is accomplished.  The claim does not specify how these tasks are completed, but just specifies what is to happen.  In looking to the specification to determine the "how," it is apparent that conventional computers and networks are all that is needed to carry out the various steps, without any improved functionality resulting from the arrangement of such conventional computers or their functions.  (Ex. 1, '452 patent, 5:64-67 (disclosing that "no customized or proprietary software download to the peer node content recipient devices is required for the systems and methods of the present invention")).)  The '452 patent did not "invent the technology"

that prepares content for sharing over a computer network, and the specification does not disclose any improvement in computer functionality to achieve this goal. The same is true of the claims in *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015), where the Federal Circuit found the claims were directed to the abstract idea of "retaining information in the navigation of online forms" because many of the claim limitations were disclosed in the specification to be "conventional" and the claims failed to recite a restriction on how the result was accomplished. *Id*. at 1348.

There are also similarities in *Content Extraction*, where the claims generally recited "a method of 1) collecting data, 2) recognizing certain data within the collected data, and 3) storing that recognized data in a memory," or simply, "[t]he concept of data collection, recognition, and storage." *Content Extraction*, 776 F.3d at 1347. In rejecting the plaintiff's argument that the claims were not abstract because they required the use of a scanner, the Federal Circuit likened the claims to those found abstract in *Alice*, which "also required a computer that processed streams of bits." *Id.* Like the *Content Extraction* claims, Claim 1 of the '452 patent is abstract because it collects content information and then retrieves and distributes content from a server based on that information. The claims in *Content Extraction* were directed to data recognition and *storage*, whereas the '452 patent is directed to data recognition and *data sharing*—the former claims stored the recognized data, while the latter claims share the recognized data.

The claims in *TLI Communications* also are instructive—where the Federal Circuit found the patent claim at issue to be directed toward the abstract idea of "classifying and storing digital images in an organized manner." *In re TLI Comm. LLC Patent Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016). The Federal Circuit described the claim as "merely provid[ing] a generic environment in which to carry out the abstract idea." *Id*. at 611. The Federal Circuit also determined that the claims are "not directed to a specific improvement to computer functionality," but rather "are

directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *Id*. at 612.

The Federal Circuit then explained that the inventor was not faced with the problems of combining a camera and a cellular telephone, transmitting images via a cellular network, or associating the images with classification information.  *Id*.  Rather, "the inventor sought to 'provid[e] for recording, administration and archiving of digital images simply, fast and in such way that the information therefore may be easily tracked.'"  *Id*.  The Federal Circuit further noted that the telephone, server, and other tangible components were not new and were described in the specification predominately in functional terms.  *Id.*  Claim 1 of the '452 patent likewise merely provides a generic environment for carrying out an abstract idea.  *See also, PersonalWeb,* 2020 WL 520618, *10 (N.D. Cal. Jan. 31, 2020) (Davila, J.) ('280 patent claims directed to retrieving and delivering copies of data items across a network); *PlanetID,* No. 19-cv-04615 (JST) (N.D. Cal. Jan. 12, 2021) (claims directed to sharing information between authorized users) (Ex. 3 at 7).

The idea underlying Claim 1 of the '452 patent is just as abstract as those in *VideoShare, Internet Patents, Content Extraction*, *TLI Communications*, *PersonalWeb,* and *PlanetID*.  Claim 1 of the '452 patent does not include any specific limitations regarding content sharing.  Rather, the claims provide broad functional language, which cover only the resulting system the applicant envisioned, not how to implement it, much less how to do so in any non-conventional manner. *Internet Patents*, 790 F.3d at 1348 (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation").  That Claim 1 of the '452 patent sends and receives the prepared content over a network does not make it any less abstract. *See, e.g.*, *Ultramercial*, 772 F.3d at 716 (noting that "the use of the Internet is not sufficient to save otherwise abstract claims from

ineligibility under § 101") (citation omitted).

Claim 1 differs from claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems.   For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018).   In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**."   *Id.* at 1348 (emphasis added).   The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way."   *Id.*   The same is not true of Claim 1 of the '452 patent.   It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.   Accordingly, Claim 1 of the '452 patent falls short of claiming eligible subject matter under § 101.

### 2.   *Alice* **Step 2:  Claim 1 of the '452 patent contains no inventive concept sufficient to transform the abstract idea into patent-eligible matter**

Because Claim 1 of the '452 patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application."   *Alice*, 573 U.S. at 218.   To pass this test, claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity."   *Ultramercial*, 772 F.3d at 715 (quotation omitted).   Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

Although the stated goal of the '452 patent is to provide content sharing in P2P networks "outside the structure and control of CDNs" (Ex. 1, '452 patent, 3:35-36), not a single technical improvement is disclosed, much less claimed.  Instead, Claim 1 is described only at a high level of generality, consisting of generic functional language where a "content delivery server" prepares content for sharing over a computer network.   To accomplish "efficient content delivery," Claim 1 recites the use of the "content delivery server computer" to prepare this content for sharing by "stor[ing] viewer information," "check[ing] content request[s], "us[ing] a trace route to segment requested content," "find[ing] peers," "return[ing] client-block pairs . . . [where the] content segmentation is based on CDN address resolution," a "trace route to CDN and P2P server manager," "dynamic feedback," and "other server side scheduling/resource allocation techniques."  (*Id.* at 10:42-54.)   But the claimed "content delivery server computer" can be virtually any computer capable of performing these generic computer functions, and may even be any of the P2P peers (*id.*, 5:59-64).

The applicant's own characterizations demonstrate that the claimed components do not "improve the functioning of the computer itself," *Alice*, 573 U.S. at 220, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016).  In *Enfish*, the Federal Circuit distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," *id.* at 1338, holding instead that "they [we]re directed to a specific improvement to the way computers operate," *id.* at 1336.   In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements."  *Id.* at 1337.  Unlike *Enfish*, nothing in Claim 1 of the '452 patent shows any unconventional method that

would amount to a "specific improvement to the way computers operate."  Therefore, the focus of the '452 patent is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  *Id.* at 1336.

There is simply nothing "inventive" about using a known process (*i.e.*, preparing content) for sharing over a computer network using ordinary computer equipment and conventional software.  *See In re TLI Comm.*, 823 F.3d at 613 (examining the specification for meaning of claim terms such as "telephone unit," "server," "image analysis unit," and "control unit," and concluding that all of the components "behave exactly as expected according to their ordinary use.").  Moreover, the abstract functional descriptions in Claim 1 are devoid of any technical explanation as to how to implement the purported invention in an inventive way.  *Id.* (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention")*; PersonalWeb,* No. 5:13-cv-01317 (EJD), 2020 WL 520618, *12-13 (N.D. Cal. Jan. 31, 2020) ("Using a generic hash function, a server system, or a computer does not render these claims non-abstract; the claims are still directed to the abstract ideas of receiving, storing, deleting, and controlling access to data.") (Fed. Cir. Mar. 6, 2020).

Unlike the Federal Circuit's decision in *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), this case does not present any factual disputes requiring resolution before the Court can decide this § 101 issue.  In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner."  *Id.* at 1369.  The Federal Circuit then examined whether the improvements described in the specification were included in the claims.  For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding

whether the invention describe[d] well-understood, routine, and conventional activities." *Id*.  But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101.  *Id*.  Here, in contrast, there is no need for fact discovery because neither the claims nor the specification of the patent describes any unconventional components or the use of generic components in some unconventional manner, and no amount of fact discovery can change that.

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in Claim 1 does not make an otherwise abstract idea patent-eligible.  *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction*, 776 F.3d at 1348 ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment.  Such a limitation has been held insufficient to save a claim in this context."); *Bancorp*, 687 F.3d at 1276–77.  In addition, an "abstract idea does not become non-abstract by limiting the invention to a particular field of use or technological environment, such as [mobile services]."  *Intellectual Ventures I LLC v. Capital One Bank U.S.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

Because Claim 1 is altogether devoid of any "inventive concept," it is patent-ineligible under § 101.  *See Alice*, 573 U.S. at 220-21.

### 3.    The remaining claims of the '452 patent fail both steps of *Alice*

The remaining claims of the '452 patent relate to the same abstract concept of preparing content for sharing over a computer network.  Specifically, the only other independent claim (Claim 5) is a method claim that refers only to a standard method for sharing data.  Claim 5 merely describes performing steps of the system described in Claim 1, including steps of

"providing" a "content delivery server computer," a "peer-to-peer (P2P) dynamic network," outside of "controlled networks and/or content distribution networks," where the content delivery server computer receives "at least one content request from a client" and provides data segmentation and identification of peer nodes.  (Ex. 1, '452 patent, Claim 5).

The dependent claims recite insignificant pre- or post-solution activity, such as adding processes to content preparation or provide user incentives:

| Pre- or Post-Solution Activity | Claims |
| --- | --- |
| distributing large data files among peer nodes | '452 patent (Cl. 2) |
| providing P2P connection by content commonality | '452 patent (Cl. 3) |
| including additional sub-networks | '452 patent (Cl. 4) |
| registering the client automatically | '452 patent (Cl. 6) |
| getting client information | '452 patent (Cl. 7) |
| ranking clients | '452 patent (Cl. 8) |
| providing content to client | '452 patent (Cl. 9) |
| providing grouping clients automatically | '452 patent (Cls. 10, 11, 12) |
| determining common content based on additional metrics | '452 patent (Cl. 13) |
| reassigning clients to other groups | '452 patent (Cl. 14) |
| providing incentives for P2P participation | '452 patent (Cl. 15) |

Each of these claims, like Claim 1, is not meaningfully limited because these activities are not "essential to the invention."  *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted).  Moreover, because all of these claims are directed to the abstract idea of preparing content for sharing over a computer network and none includes any inventive concept, the claims

also fail both steps of the *Alice* test.

### B.   The Amended Complaint Should Alternatively be Dismissed for Failing to Meet the *Twombly/Iqbal* Pleading Standard for Patent Cases

The Amended Complaint alleges that Kollective's SD ECDN product infringes claims 1-3 and 5 of the '452 patent, yet its recitations fail to meet the *Twombly/Iqbal* pleading standard by adequately apprising Kollective how its product allegedly infringes.  As shown below, in some instances the Amended Complaint fails to address certain limitations in the asserted claims, in other instances it provides no support for its conclusory statements, and in still other instances it merely quotes large portions of an SD ECDN white paper that have nothing to do with the asserted claim limitation.

Any *one* of these more than *two-dozen* defects warrants dismissal, as courts throughout this District—including this Court—have ruled in similar circumstances.  *See e.g., Novitaz,* 2017 WL 2311407, *3 (N.D. Cal. May 26, 2017) (Davila, J.) (a complaint should be dismissed under *Twombly/Iqbal* when it "does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied"); *e.Digital,* 2016 WL 4427209, *3 (N.D. Cal. Aug. 22, 2016) (a plaintiff must "plausibly allege that the accused product practices each of the limitations found in at least one asserted claim"); *Atlas IP,* 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016) ("Simply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation of any asserted claim or addressing all of the claim requirements, is insufficient.").

### 1.   '452 Patent, Claim 1

Paragraphs 33-39 of the Amended Complaint contain the infringement allegations regarding Claim 1.  Paragraph 33 merely quotes Claim 1.  Paragraph 34 lacks context to any portion of Claim 1, is largely unintelligible, and cites nothing in support, thereby rendering its statements "'[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements,' which 'do not suffice.'" *Novitaz,* 2017 WL 2311407, *4.  Paragraph 35

is directed to the preamble of Claim 1, but it likewise violates *Twombly/Iqbal* via its conclusory,

wholly unsupported nature. *Id.*

Paragraph 36 is directed to the first element of Claim 1 calling for "at least one content

delivery server…".  Paragraphs 37-38 are directed to the second element of Claim 1 calling for:

> at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes, ***wherein the multiplicity of peer nodes consume the same content within a predetermined time***, wherein the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network, ***wherein the at least one P2P dynamic network is based on at least one trace route***; wherein ***the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network***.

(Ex. 1, '452 patent, Claim 1).  Nowhere in Paragraphs 37-38 will the Court find any reference,

much less explanation, of how the accused SD ECDN product meets any of the three above-

emphasized portions of the second element of Claim 1.  The Amended Complaint merely quotes

two long, disparate paragraphs of a Kollective white paper discussing the SD ECDN product.

While the complete absence of any analysis might suffice if the quoted material fairly apprised

Kollective of how the SD ECDN product allegedly meets these claim limitations, that is not the

case here.  Nothing in Paragraphs 37-38 so much as even hints at the claimed subject matter,

much less "map[s] this information onto any elements of [] the claims".  *Novitaz,* 2017 WL

2311407, *4.  Thus, while perhaps giving the appearance of being "detailed" via its long quotes,

there is simply no logical or substantive correlation between the quotes and the particular claim

language, thereby precluding the Court from concluding "that it is plausible that the [accused

product] directly infringes [Claim 1]". *Id.*

Paragraph 39 appears directed to the third, fourth, and fifth elements of Claim 1, which

state:

> ***wherein the at least one content delivery server computer is operable to store***

*viewer information, check content request, use the trace route to segment requested content, find peers, and return client-block pairs*;

*wherein distribution of P2P content delivery over the at least one P2P content dynamic network is based on content segmentation*;

*wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques*.

(Ex. 1, '452 patent, Claim 1).  Nowhere in Paragraph 39 will the Court find any reference, much less explanation, of how the accused SD ECDN product meets *any* of the third, fourth, and fifth elements of Claim 1.  The Amended Complaint once again merely quotes two long, disparate paragraphs of the same Kollective white paper.  Like before, the complete absence of any analysis might suffice if the quoted material fairly apprised Kollective of how the SD ECDN product allegedly meets these claim limitations, but that is not the case.  Here, the substantive nature of the claim language and the quoted material are so different that nothing in Paragraph 39 even hints at the claimed subject matter, much less "map[s] this information onto any elements of [] the claims," as required to meet *Twombly/Iqbal*.  *Novitaz,* 2017 WL 2311407, *4.

Accordingly, Kollective submits that the allegations directed to Claim 1 warrant dismissal since even a *single* instance of the Amended Complaint failing to plausibly correlate any *one* of the above-noted *fifteen* missing claim elements to the SD ECDN product violates the *Twombly/Iqbal* pleading standard.  *Id*. at *3-4; *Atlas IP, LLC v. Exelon Corp.,* No. 15-cv-10746, 2016 WL 2866134, at *5 (N.D. Ill. May 17, 2016) ("[F]actual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement…"); *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("the failure to meet a single limitation is sufficient to negate infringement of [a] claim.")

## 2. '452 Patent, Claims 2-3

Paragraphs 40-41 of the Amended Complaint correspond to Claims 2-3, respectively.

Since Claims 2-3 depend from Claim 1 (thereby incorporating all of the limitations of Claim 1), the Amended Complaint cannot properly articulate its infringement of these claims under *Twombly/Iqbal* without first properly alleging infringement of Claim 1.  *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("a dependent claim includes all the limitations of the claim from which it depends").  Accordingly, the Amended Complaint fails the *Twombly/Iqbal* standard for Claims 2-3 for at least the same reasons described above for Claim 1.

### 3.   '452 Patent, Claim 5

Paragraphs 28-32 of the Amended Complaint contain the infringement allegations regarding Claim 5.  These allegations suffer the same pleading defects mentioned above with respect to Claim 1.  For example, Paragraph 28 is directed to the preamble of Claim 5, yet its unsupported, conclusory nature violates *Twombly/Iqbal*.  *Novitaz,* 2017 WL 2311407, *4.

Paragraph 29 is directed to the first element of Claim 5 calling for "providing at least one content delivery server…".  Paragraph 29 also is directed to the second element of Claim 5 calling for:

> providing at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes constructed and configured for electronic communication over the at least one P2P dynamic network, wherein **the multiplicity of peer nodes consume the same content within a predetermined time**, **wherein the at least one P2P dynamic network is based on at least one trace route**, wherein **the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network**.

(Ex. 1, '452 patent, Claim 5).  Nowhere in Paragraph 29 will the Court find any reference, much less explanation, of how the accused SD ECDN product meets the numerous, above-emphasized portions of the second element of Claim 5.  The Amended Complaint once again merely quotes two long, disparate paragraphs of the same Kollective white paper discussing the SD ECDN product.  Again, while the complete absence of any analysis might suffice if the quoted material fairly apprised Kollective of how the SD ECDN product allegedly meets these claim limitations,

that is not the case.  The substantive nature of the claim language and the quoted material are so different that nothing in Paragraph 29 even hints at the claimed subject matter, much less "map[s] this information onto any elements of [] the claims" as *Twombly/Iqbal* require.  *Novitaz,* 2017 WL 2311407, *4.

Paragraph 30 is directed to the third element of Claim 5 calling for "at least one content delivery server computer receiving at least one content request from a client."  Paragraph 30 alleges the SD ECDN product meets this claim element because "Network administrators can set how widely a specific group of agents is allowed to look for effective peers for the specific content item requested."  As shown, the requisite "mapping" between the claim element and CEI's rationale for infringement is missing because there is no logical correlation between the two.  The claim references a client/peer making a content request to a content delivery server, yet the allegation in Paragraph 30 is directed to a network administrator controlling how an agent/peer makes a content request to other peers.  As this Court held in *Novitaz,* such illogic fails the *Twombly/Iqbal* analysis.  2017 WL 2311407, *3 ("if a complaint does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied, it is hard to see how infringement would be 'probable'").

Paragraph 31 is directed to the fourth element of Claim 5, which calls for:

> **the at least one content delivery server computer segmenting requested content based on CDN address resolution, trace route to CDN and the P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, and other server side scheduling/resource allocation techniques**.

(Ex. 1, '452 patent, Claim 5).  Nowhere in Paragraph 31 will the Court find any reference, much less explanation, of how the accused SD ECDN product meets *any* of the five requirements of the fourth element of Claim 5.  The Amended Complaint once again merely quotes two long, disparate paragraphs of the same Kollective white paper.  Nothing in Paragraph 31 so much as

even hints at the claimed subject matter, much less "map[s] this information onto any elements of [] the claims". *Novitaz,* 2017 WL 2311407, *4. Thus, while perhaps giving the appearance of being "detailed" via its long quotes, there is simply no logical or substantive correlation between the quotes and the particular claim language.

Paragraph 32 is directed to the fifth element of Claim 5, which call for:

> automatically identifying at least one peer node having at least one segment of the requested content in close network proximity to the client.

(Ex. 1, '452 patent, Claim 5).  Paragraph 32 alleges that the SD ECDN product meets this fifth claim element because "[t]he hop count method approximates whether an agent can peer from the LAN or not."   Comparing the claim language to the infringement allegation shows there is no substantive or logical correlation between the claim language and "the hop count method".   The fifth claim element is directed to automatically identifying a peer node having a segment of the requested content in proximity to another client/peer, whereas CEI's reference to the SD ECDN white paper is limited to an unexplained discussion of a "hop count method" that assesses whether an agent/peer can peer from the LAN.   Still further, there is no articulation in the Amended Complaint about the hop count method being "automatic," no discussion of it being used to determine whether "a peer node has at least one segment of the requested content," and no discussion of whether it determines whether a peer node is "in close network proximity to the client".   These disconnects, especially when combined with the absence of any explanation, fails the *Twombly/Iqbal* analysis.   *Novitaz,* 2017 WL 2311407, *3 ("if a complaint does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied, it is hard to see how infringement would be 'probable'".)

Finally, Paragraph 32 also is directed to the sixth element of Claim 5, which calls for:

> at least one peer node most proximal to the client sharing the at least one segment of the requested content.

---

(Ex. 1, '452 patent, Claim 5).  Paragraph 32 alleges that the SD ECDN product meets this claim element because "[p]eering within 3 or 4 hops is usually within a LAN environment, so allowing higher hop counts typically means an agent will peer across a WAN segment which, in most cases, is not desirable."  Once again, there is no substantive or logical correlation between the claim language and requisite infringement "mapping."  The sixth claim element is directed to a peer node "most proximal to the client" sharing content, whereas CEI's reference to the SD ECDN white paper is limited to an unexplained quote indicating that peering across a WAN segment is not desirable.  This disconnect, especially when combined with the complete absence of any explanation, fails the *Twombly/Iqbal* analysis.  *Novitaz,* 2017 WL 2311407, *3.  As one district judge commented, this complete lack of analysis (as described above for each of claims 1, 2-3, and 5) warrants dismissal.

> I think it is incumbent on a plaintiff to provide a readable document that plausibly alleges infringement.   [citation omitted]   There are numerous district court decisions that require, to plausibly state a claim for patent infringement, that the complaint relate its factual allegations to an asserted claim of the patent.  [string cite omitted]  I do not think providing me a copy of the patent and a description of the product, at least in this case, meets the required standard.

*Sipco, LLC, IP Co., LLC v. Streetline, Inc.,* No. 16-830 (RGA), 2017 WL 10795601, *2 (D. Del. Jun 21, 2017).

## V.    CONCLUSION

For the foregoing reasons, Kollective respectfully requests that the Court dismiss CEI's Amended Complaint for failure to state a claim upon which relief can be granted.  Because leave to amend would be futile with respect to the patentable subject matter issue, and CEI has already amended its Complaint in response to Kollective's first Motion to Dismiss, Kollective requests dismissal with prejudice.

Date: February 19, 2021                          Respectfully submitted,

                                                SILICON VALLEY LAW GROUP

                                                */s/ Stephen S. Wu*
                                                Stephen S. Wu

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICHAEL W. STEBBINS, SBN 138326
Email:  mws@svlg.com
STEPHEN S. WU, SBN 205091
Email:  ssw@svlg.com
MARC G. VAN NIEKERK, SBN 201329
Email:  mvn@svlg.com
**SILICON VALLEY LAW GROUP**
1 North Market Street, Suite 200
San Jose, CA 95113
Telephone:  408) 573-5700
Facsimile:   (408) 573-5701

PARK, VAUGHAN, FLEMING & DOWLER, LLP
MICHAEL S. DOWLER, TX SBN 00783979 (*pro
hac vice*)
Email:  mike@parklegal.com
PARK, VAUGHAN, FLEMING & DOWLER, LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
Telephone:  (713) 821-1540
Facsimile:  (713) 821-1401
Attorneys for Defendant
KOLLECTIVE TECHNOLOGY, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 19, 2021, the foregoing document as electronically filed with the Clerk of the court for the United States District Court, Northern District of California, using the Court's Electronic Case Filing (ECF) system.  The ECF system routinely sends a "notice of Electronic Filing" to all counsel of record who have consented to accept this notice as service of this document by electronic means.  Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.


/s/ *Stephen S. Wu*
STEPHEN S. WU