1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

COOPERATIVE ENTERTAINMENT, INC.,

Plaintiff,

v.

KOLLECTIVE TECHNOLOGY, INC.,

Defendant.

Case No.  5:20-cv-07273-EJD

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 19

Plaintiff Cooperative Entertainment, Inc. ("CEI") brings this suit against defendant Kollective Technology, Inc. ("Kollective") for infringement of U.S. Patent No. 9,432,452 ("the '452 patent"). Dkt. No. 18. Kollective now moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 35 U.S.C § 101. Dkt. No. 19. The Court finds this motion suitable for consideration without oral argument. Civ. L.R. 7-1(b). Having considered the parties' moving papers, the Court GRANTS CEI's motion to dismiss.

**I.     BACKGROUND**

Plaintiff CEI is a North Carolina corporation with its principal place of business in Raleigh, North Carolina. Dkt. No. 18 ¶ 1. Defendant Kollective is a Delaware corporation with its principal place of business in Bend, Oregon. *Id.* ¶ 2.

CEI is the owner of the '452 patent, entitled "Systems and Methods for Dynamic Networked Peer-to-Peer Content Distribution." *Id.* ¶ 8, Ex. B. The '452 patent relates to "[p]eer-to-peer (P2P) dynamic networks and/or sub-networks for file distribution between peers receiving the same content, wherein nodes are outside controlled networks and/or content distribution networks (CDNs), and wherein large data files are distributed or shared across and among the peer

Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS

1

United States District Court
Northern District of California

1    nodes." '452 patent at Abstract.  In particular, the '452 patent concerns sharing the same content

2    across peers in the P2P network outside the confines of a CDN.  *Id.* at 3:40-64; *see also id.* at 5:4-

3    10 ("Preferably, the systems and methods of the present invention provide for dynamic P2P

4    networks distributing digital content in real-time or near-real-time to a multiplicity of peer nodes

5    within the network, wherein the peer nodes are established and/or defined based upon their

6    consumption of the same content, i.e., the peer nodes are receiving the same content.").

7            The '452 patent includes two independent claims, claims 1 and 5, from which all other

8    claims depend.  Claim 1 claims:

9            1. A system for virtualized computing peer-based content sharing
                comprising:

10           at least one content delivery server computer constructed and
                 configured for electrical connection and communication via
11               at least one communications network; and

12           at least one peer-to-peer (P2P) dynamic network including a
                 multiplicity of peer nodes, wherein the multiplicity of peer
13               nodes consume the same content within a predetermined
                 time, wherein the multiplicity of peer nodes are constructed
14               and configured for electronic communication over the at
                 least one P2P dynamic
15

16               network, wherein the at least one P2P dynamic network is
                 based on at least one trace route; wherein the multiplicity of
17               peer nodes is distributed outside controlled networks and/or
                 content distribution networks (CDNs) that are included
18               within the at least one communications network;

19           wherein the at least one content delivery server computer is operable
                 to store viewer information, check content request, use the
20               trace route to segment requested content, find peers, and
                 return client-block pairs;

21

22           wherein distribution of P2P content delivery over the at least one
                 P2P dynamic network is based on content segmentation;

23           wherein content segmentation is based on CDN address resolution,
                 trace route to CDN and P2P server manager, dynamic
24               feedback from peers reporting traffic rates between
                 individual peer and its neighbors, round-robin and other
25               server side scheduling/resource allocation techniques.

26    *Id.* at claim 1.  Claim 5 is a method claim that recites:

27           5. A method for virtualized computing peer-based content sharing

28    Case No.: 5:20-cv-07273-EJD
      ORDER GRANTING MOTION TO DISMISS

comprising the steps of:

providing at least one content delivery server computer constructed
and configured for electrical connection and communication
via at least one communications network;

providing at least one peer-to-peer (P2P) dynamic network including
a multiplicity of peer nodes constructed and configured for
electronic communication over the at least one P2P dynamic
network, wherein the multiplicity of peer nodes consume the
same content within a predetermined time, wherein the at
least one P2P dynamic network is based on at least one trace
route, wherein the multiplicity of peer nodes is distributed
outside controlled networks and/or content distribution
networks (CDNs) that are included within the at least one
communications network;

the at least one content delivery server computer receiving at least
one content request from a client;

the at least one content delivery server computer segmenting
requested content based on CDN address resolution, trace
route to CDN and the P2P server manager, dynamic
feedback from peers reporting traffic rates between
individual peer and its neighbors, round-robin, and other
server side scheduling/resource allocation techniques;

automatically identifying at least one peer node having at least one
segment of the requested content in close network proximity
to the client; and

at least one peer node most proximal to the client sharing the at least
one segment of the requested content.

*Id.* at claim 5.

CEI asserts that, when used in conjunction with Microsoft Teams software, Kollective's

SD ECDN product infringes claims 1, 2, 3, and 5.  Dkt. No. 18 ¶¶ 26-41.

## II.      LEGAL STANDARD

### A.      Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the

complaint.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal

"is proper only where there is no cognizable legal theory or an absence of sufficient facts to

support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  For

purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the

Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS

*United States District Court*
*Northern District of California*

1    complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher*

2    *v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  To survive a Rule 12(b)(6) motion, the plaintiff

3    must allege facts sufficient to state a claim to relief that is "plausible on its face." *Bell Atl. Corp.*

4    *v. Twombly*, 550 U.S. 544, 570 (2007).

5         Additionally, to state a claim for patent infringement, "a patentee need only plead facts

6    sufficient to place the alleged infringer on notice.  This requirement ensures that the accused

7    infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and

8    defend itself." *Internet Patents Corp. v. Gen. Auto. Ins. Servs.*, 29 F. Supp. 3d 1264, 1267 (N.D.

9    Cal. 2013) (quoting *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794

10   (Fed. Cir. 2000)).  A court generally may not consider any material beyond the pleadings for a

11   Rule 12(b)(6) analysis; however, documents appended to the complaint, incorporated by reference in

12   the complaint, or which properly are the subject of judicial notice may be considered along with the

13   complaint when deciding a Rule 12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998

14   (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555

15   n.19 (9th Cir. 1989).

16        **B.     35 U.S.C § 101**

17        Section 101 of the Patent Act provides that a patent may be obtained for "any new and

18   useful process, machine, manufacture, or composition of matter, or any new and useful

19   improvement thereof."  35 U.S.C. § 101.  However, the Supreme Court has recognized that these

20   broad categories contain an implicit exception: "[l]aws of nature, natural phenomena, and abstract

21   ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576,

22   589 (2013) (internal quotation marks and citation omitted).  In applying this exception, courts

23   "must distinguish between patents that claim the building blocks of human ingenuity and those

24   that integrate the building blocks into something more." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,

25   573 U.S. 208 (2014).

26        To determine whether a claim falls within the "abstract idea" exception, the Supreme Court

27   has established a two-step framework.  First, the court must "determine whether the claims at issue

28   Case No.: 5:20-cv-07273-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    are directed to a patent-ineligible concept." *Id.* at 2355.  Second, if the claims are directed to

2    patent-ineligible subject matter, the Court must then "consider the elements of each claim both

3    individually and 'as an ordered combination' to determine whether the additional elements

4    'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*

5    *Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)).  The Supreme Court has

6    described this as a "search for an 'inventive concept'—i.e., an element or combination of elements

7    that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent

8    upon the [ineligible concept] itself.'" *Id.*

9    **III.    DISCUSSION**

10          CEI argues that the Court should dismiss the amended complaint for two reasons: (1) the

11   '452 patent is invalid under § 101, and (2) the complaint fails to plausibly plead patent

12   infringement because it does not adequately allege that CEI's accused SD ECDN product practices

13   each and every limitation of the asserted claims.  The Court begins with the § 101 analysis.

14          **A.    *Alice* Step One**

15          At step one of the *Alice* framework, the Court "look[s] at the focus of the claimed advance

16   over the prior art to determine if the claim's character as a whole is directed to excluded subject

17   matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).

18   Courts must be careful not to overgeneralize claims otherwise "all inventions can be reduced to

19   underlying principles of nature." *Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981).  On the other

20   hand, the judicial inquiry should root out "creative drafting efforts" designed to "monopolize" the

21   abstract idea. *See Alice*, 573 U.S. at 221.  "In cases involving software innovations, this inquiry

22   often turns on whether the claims focus on 'the specific asserted improvement in computer

23   capabilities . . . or, instead, on a process that qualifies as an abstract idea for which computers are

24   invoked merely as a tool.'" *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir.

25   2018) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

26   Merely stating an "improved result" to an otherwise abstract idea is insufficient; the patent must

27   recite a "specific means or method that solves a problem in an existing technological process."

1    *Koninkliijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019).

2    Accordingly, the relevant inquiry is what problem the patent claims to solve and whether the

3    patent specifically asserts a method to make improvements.

4    The focus of the '452 patent is the preparation and transmission of content to peers through

5    a computer network. '452 patent at 4:28-65. The preparation of data consists of segmentation.

6    *Id.* The transmitted content may include photos, video, game and social media content, and large

7    data files in general. *Id.* at 4:36-40, 4:50-52, 9:23-40. The specification also describes storing

8    data and database processing. *Id.* at 9:30-33 ("Additionally, it is possible to use peer nodes for

9    distributed storage as well as additional (game-based/social network) database processing.").

10   According to the specification, the '452 patent "provide[s] more efficient and reduced cost of

11   delivery for the content" transmitted through the P2P network, as well as "increased reliability,

12   more redundancy, and more efficient delivery than those of the prior art." '452 patent at 4:49-50,

13   5:28-30. CEI sums up the '452 patent as "a better way of content sharing." Dkt. No. 20 at 12.

14   The preparation and transmission of data over a computer network are abstract ideas that

15   courts have consistent found to be patent-ineligible. "[C]ourts have previously found that patents

16   involving the transformation and transmission of information in one form or another form

17   constituted abstract ideas." *Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-cv-4550-JFB-SIL,

18   2016 WL 1253674, at *28 (E.D.N.Y. Mar. 30, 2016) (listing cases); *see also Intellectual Ventures

19   I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) ("sending and receiving

20   information" over a network are "routine computer functions"); *Intellectual Ventures I LLC v.

21   Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) (finding the receipt of e-mail (and other

22   data file) identifiers, characterizing e-mail based on the identifiers, and communicating the

23   characterization (i.e., filtering files/e-mail) to be abstract ideas); *buySAFE, Inc. v. Google, Inc.*,

24   765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding that "receiv[ing] and send[ing] the information over

25   a network" is generic); *VideoShare, LLC v. Google, Inc.*, No. 13-cv-990 (GMS), 2016 WL

26   4137524 (D. Del. Aug. 2, 2016) (finding invalid under § 101 patent claims directed to preparing a

27   video in streaming video format for sharing over a computer network), *aff'd* 695 F. App'x 577

28   Case No.: 5:20-cv-07273-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    (Fed. Cir. 2017).  Recently, the Federal Circuit affirmed the invalidation of a patent claiming a

2    system for backing up data by requesting, transmitting, receiving, copying, deleting, and storing

3    records.  *WhitServe LLC v. Dropbox, Inc.*, --- F. App'x ---, 2021 WL 1608941 (Fed. Cir. 2021).  In

4    *WhitServe*, the Federal Circuit found that the patent was directed to an abstract idea because the

5    "specification [did] not . . . explain the technological processes underlying the purported

6    technological improvement" but "rel[ied] on the ordinary storage and transmission capabilities of

7    computers within a network and apply that ordinary functionality in the particular context of

8    onsite backup."  *Id.* at *4 (internal quotation marks omitted).  "[C]laims reciting computer

9    function, or the mere manipulation of data, are directed to an abstract idea."  *Id.*  Here, the '452

10   patent does no more than recite (1) the mere manipulation of data through segmenting, and (2) the

11   basic computer functions of storing, checking, requesting, and transmitting data.  '452 patent at

12   10:42-45, 11:12-25.  If all generic computer-implemented steps were stripped from the asserted

13   claims, all that would be left would be the transmission of segmented portions of information

14   between peers, which a human could easily perform—for example, students providing each other

15   with photocopied chapters of a textbook instead of each student obtaining the textbook from the

16   bookstore.  *See Symantec*, 838 F.3d at 1318 (holding that claims were directed to an abstract

17   concept because, "with the exception of generic computer-implemented steps, there is nothing in

18   the claims themselves that foreclose them from being performed by a human, mentally or with pen

19   and paper").

20         At step one, the Court broadly construes a patent's purpose and asks what problem the

21   patent seeks to resolve.  CEI asserts that claims 1 and 5 are "directed to a specific way that

22   improves the legacy P2P networks," but its arguments appear to be directed more to whether the

23   patent contains an inventive concept.  *See* Dkt. No. 20 at 11, 13 ("[T]he patentee took an existing

24   tool—trace[ ]routes used to test the pathway between and among nodes—and used that existing

25   tool to make something new" by using trace routes to "perform the content segmentation"; "the

26   patentee taught those of ordinary skill in the art how to manipulate the prior art systems in a new,

27   unexpected way . . . .").  The '452 patent does not otherwise identify any particular shortcoming

28   Case No.: 5:20-cv-07273-EJD
     ORDER GRANTING MOTION TO DISMISS

7

United States District Court
Northern District of California

United States District Court
Northern District of California

1    that it is intended to address.  CEI suggests—without any supporting evidence—that the '452

2    patent claims solve an unspecified "problem of capacity where the prior art P2P systems had

3    failed."   Dkt. No. 20 at 3, 9.  However, "capacity" is not described anywhere in the specification

4    as a problem that the purported invention is meant to overcome.  "Capacity" is mentioned exactly

5    twice in the specification: once in describing a prior art patent, and once in describing aggregate

6    use of the collective peer nodes.  '452 patent at 3:17-28 (describing patent for "method for

7    streaming multimedia content" that "advantageously offload[s]" tasks preparatory to streaming

8    "to the client side and distributed among [user multimedia devices], to realize reduced bandwidth

9    and delay and to conserve on storage capacity of a UMD"); *id.* at 9:54-63 ("The systems and

10   methods of the present invention provide for harnessing the content recipient devices to aggregate

11   or assemble intelligent functionality of the devices unassociated with the content receipt, including

12   but not limited to computational storage and processing capacity of the content recipient devices in

13   the P2P dynamic network . . . .").  The latter reference concerns the capacity of the individual

14   devices receiving transmitted data, not the capacity of the network.

15       Even if CEI were correct in that the '452 patent "improves the legacy P2P networks" by

16   solving a "problem of capacity," CEI does not explain *how* this purported improvement is

17   accomplished, and neither does the patent.  The patent does not disclose any algorithm or special

18   programming or any special technology beyond standard, generic computing equipment already

19   disclosed in prior art.  *See* '452 patent at 1:17-20 ("Generally, it is known in the relevant prior art

20   to provide peer-to-peer (P2P) networks via the internet for sharing digital content, including video,

21   for live streaming service over content distribution networks (CDNs)."); *id.* at 5:11-14 ("the

22   embodiments of the present invention described herein assume the use of existing audio and/or

23   video playback"); *id.* at 5:59-67 ("[T]he systems and methods of the present invention may be

24   integrated with applications (Apps) for mobile devices, including but no limited to smart phones,

25   tablet computers, mobile computers, mobile communication devices, and the like, and

26   combinations thereof.  However, no customized or proprietary software download to the peer node

27   content recipient devices is required for the systems and methods of the present invention.").  In

28   Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

terms of computer equipment, claims 1 and 5 require nothing more than a "content delivery server

computer constructed and configured for electrical connection and communication via at least one

communications network" and a P2P "dynamic network including a multiplicity of peer nodes

construed and configured for electronic communication" over the network.  *Id.* at 10:27-31,

10:64–11:4.  CEI does not appear to dispute that the content delivery server computer could be

any computer capable of performing the above functions, or that the peer nodes could be any

computer or device connected to a P2P network.

Furthermore, Claims 1 and 5 merely use results-based functional language: claim 1 claims

a system with a server computer capable of performing basic computing functions (storing data,

checking data, preparing or segmenting data, identifying peer nodes, and delivering content) and a

P2P network with peer nodes that consume common content within a predetermined time.  Claim

5 parrots claim 1's system in method form, with the additional step of automatically identifying a

peer node in close proximity to the client, which shares at least one segment of the requested data

with the client.  When claims recite purely functional language and use conventional technology in

a typical manner, the claims are not patent eligible.  *Two-Way Media Ltd. v. Comcast Cable

Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (holding that claim is directed to an

abstract concept at step one because it "recites a method for routing information using result-based

functional language," such as "converting," "routing," "controlling," "monitoring," and

"accumulating records," but it "does not sufficiently describe how to achieve these results in a

non-abstract way"); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016)

(finding claims abstract where the "specification fails to provide any technical details for the

tangible components" and "instead predominately describes the system and methods in purely

functional terms"); *Affinity Labs*, 838 F.3d at 1257 (holding that claim is abstract at step one

because "it claims the general concept of out-of-region delivery of broadcast content through the

use of conventional devices, without offering any technological means of effecting that concept").

CEI does not address the Federal Circuit case law cited above or in Kollective's motion.

Because the patent merely states an improved result to an abstract idea without reciting a "specific

Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS

9

United States District Court
Northern District of California

1   means or method that solves a problem in an existing technological process," *Koninkliijke*, 942

2   F.3d at 1150, the claims are not patent eligible.  Accordingly, the Court concludes at step one of

3   the *Alice* framework that the claims of the '452 patent are directed to an abstract idea.

4           **B.**     ***Alice* Step Two**

5           At step two, the Court examines the elements of the claims, both individually and "as an

6   ordered combination" to determine if they contain an "inventive step" sufficient to "transform" the

7   claimed abstract idea into a patent-eligible application.  *Alice*, 573 U.S. at 221 (citing *Mayo*, 556

8   U.S. at 78–79).  Step two is satisfied when the claim limitations "involve more than performance

9   of 'well-understood, routine, [and] conventional activities previously known to the industry.'"

10   *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347–

11   48 (quoting *Alice*, 573 U.S. at 225); *see also TLI Commc'ns*, 823 F.3d at 613 ("It is well-settled

12   that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to

13   an otherwise abstract idea.").  "If a claim's only 'inventive concept' is the application of an

14   abstract idea using conventional and well-understood techniques, the claim has not been

15   transformed into a patent-eligible application of an abstract idea."  *BSG Tech LLC v. Buyseasons,*

16   *Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018).  After identifying an ineligible concept at step one,

17   the Court asks at step two: "What else is there in the claims?"  *Mayo*, 566 U.S. at 78.

18           CEI first asserts that the '452 patent's inventive concept is the "use [of] trace[ ]routes to

19   identify common content that will be consumed by the peers and then segmenting and distributing

20   the content based on the trace[ ]route."  Dkt. No. 20 at 12.  Elsewhere in its opposition brief, CEI

21   describes the purported inventive concept as "segmenting content in a virtual P2P network using

22   the tools of the CDN on the backend."  *Id.* at 14; *see also id.* at 15 (citing paragraphs 12 and 13 of

23   the complaint for the assertion that "the amended complaint specifically alleges that the '452

24   patent discloses an 'inventive concept' that was recognized and subsequently upheld by the U.S.

25   PTO").  CEI argues that the patent examiner's finding that this purported inventive concept was

26   lacking in the prior art is "presumed correct" and because CEI so pled in its complaint, that

27   allegation "should be accepted by the Court as true at the pleading stage."  *Id.* at 12.  While an

28   Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS

1    issued patent is generally entitled to a presumption of validity, 35 U.S.C. § 282(a), the Court is not

2    required to "assume the truth of legal conclusions merely because they are cast in the form of

3    factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal

4    quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[W]e are not

5    bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation

6    marks omitted); *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d

7    1323, 1332 (Fed. Cir. 2012). Courts can and do regularly assess a patent's validity under § 101 at

8    the pleading stage. *See, e.g.*, *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d

9    1352 (Fed. Cir. 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss

10   stage, before claim construction or significant discovery has commenced.").

11        CEI relies principally on two Federal Circuit cases in support of its argument that it

12   adequately alleges in its amended complaint that the '452 patent discloses an inventive concept:

13   *Aatrix Software, Inc. v. Green Shades Software*, 882 F.3d 1121 (Fed. Cir. 2018), and *BASCOM*

14   *Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). Dkt. No. 20

15   at 14–15. Both cases are distinguishable. In *Aatrix*, the Federal Circuit held that the district court

16   erred in determining that the disputed claim of the patent-in-suit was ineligible solely because it

17   was directed to an intangible embodiment. The Federal Circuit further held that "patentees who

18   adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under

19   Rule 12(b)(6)." *Id.* at 1126–27. Aatrix's complaint included numerous allegations related to the

20   inventive concepts in the claimed technology, including a description of "the development of the

21   patented invention," "the problems present in prior art," and "specific allegations directed to

22   'improvements and problems solved by the Aatrix patented inventions.'" *Id.* at 1127. In contrast,

23   CEI's allegations do not contain a comparable level of detail and are not similarly well-pled, as

24   they are not grounded in the patent specification or file history. The amended complaint does not

25   provide a description of the development of the patented invention, other than to describe the

26   named inventors and original assignee of the patent. Dkt. No. 18 at 2. The amended complaint

27   identifies "capacity" as a problem in P2P network sharing, *id.* at 2 and ¶ 24, but as discussed

28   Case No.: 5:20-cv-07273-EJD
     ORDER GRANTING MOTION TO DISMISS
                                        11

United States District Court
Northern District of California

1    above, the patent itself does not identify any problem it is intended to solve, much less the

2    problem of capacity. *See supra* Section III.A.  Finally, paragraph 13 of the complaint refers to the

3    benefits of the purported invention, which consists of "sav[ing] time, improv[ing] redundancy, and

4    also reduc[ing] or eliminat[ing] costs," as well as "creat[ing] more efficient content delivery . . . ."

5    Dkt. No. 18 ¶ 13 (quoting '452 patent at 5:38-48).  These benefits amount to nothing more than

6    improved efficiency, not an inventive concept.  "An improved result, without more stated in the

7    claim, is not enough to confer eligibility to an otherwise abstract idea." *Koninkliijke*, 942 F.3d at

8    1150.

9         Nor is this situation comparable to *BASCOM*, where the Federal Circuit held that the

10   patent-in-suit directed to filtering content on the Internet was not ineligible under § 101 because it

11   claimed "a technology-based solution (not an abstract-idea-based solution implemented with

12   generic technical components in a conventional way) to filter content on the Internet that

13   overcomes existing problems with other Internet filtering systems."  827 F.3d at 1351.  As

14   discussed above, the '452 patent does not disclose any particular problem that it is intended to

15   solve, and it merely implements the abstract idea of preparing and transmitting data over a

16   computer network with generic computer components using conventional technology.  *See Erie*

17   *Indem. Co.*, 850 F.3d at 1329 ("sending and receiving information" over a network are "routine

18   computer functions"); *Alacritech, Inc. v. Intel Corp.*, 817 F. App'x 995 (Fed. Cir. 2020)

19   (discussing patentability of patents issued in 2007, 2008, and 2010 that concerned dividing data in

20   segments for transmission, and describing prior art from 1981 teaching a TCP protocol that

21   segmented data into separate packets for transmission).  As the *BASCOM* court noted, claims like

22   claims 1 and 5 of the '452 patent that "merely recite the abstract idea . . . along with the

23   requirement to perform it on . . . a set of generic computer components" do not contain an

24   inventive concept.  *Id.* 1350.  "An inventive concept . . . cannot simply be an instruction to

25   implement or apply the abstract idea on a computer."  *Id.* at 1349.

26        CEI's arguments concerning novelty are not persuasive, as novelty does not necessarily

27   transform an abstract idea into a patentable one.  *See, e.g.*, *SAP Am., Inc. v. InvestPic, LLC*, 898

28   Case No.: 5:20-cv-07273-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    F.3d 1161, 1163 (Fed. Cir. 2018) ("We may assume that the techniques claimed are

2    groundbreaking, innovative, or even brilliant, but that is not enough for eligibility.");

3    *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("We do not agree . . . that the

4    addition of merely novel or non-routine components to the claimed idea necessarily turns an

5    abstraction into something concrete.").  As for CEI's argument that "the patentee took an existing

6    tool—trace[ ]routes used to test the pathway between and among nodes—and used that existing

7    tool to make something new" by using trace routes to "perform the content segmentation," Dkt.

8    No. 20 at 13, that contention is inconsistent with the plain language of the patent itself.  Neither

9    the specification nor the independent claims rely *solely* on trace routes to accomplish the purpose

10   of transmitting and delivering segmented content among peers.  '452 patent at 5:49-56 ("Factors

11   for balancing or managing distribution of the P2P content delivery over dynamic networks

12   associated with the present invention include segmentation based on CDN address resolution,

13   trace route to CDN and the P2P server manager, dynamic feedback from peers reporting traffic

14   rates between individual peer and its neighbors, round-robin, other server side scheduling/resource

15   allocation techniques, and combinations thereof."); *id.* at claim 1 (claiming distribution of P2P

16   content delivery based on content segmentation, "wherein content segmentation is based on CDN

17   address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers

18   reporting traffic rates between individual peer and its neighbors, round-robin and other server side

19   scheduling/resource allocation techniques"); *id.* at claim 5 (claiming "at least one content delivery

20   server computer segmenting requested content based on CDN address resolution, trace route to

21   CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between

22   individual peer and its neighbors, round-robin, and other server side scheduling/resource

23   allocation techniques"); *see also* Dkt. No. 20-1 at ECF p.1 (allowing the '452 patent to issue over

24   a rejection under 35 U.S.C. § 103 because "the prior arts of record, failed to disclose or suggest

25   that the multiplicity of peer nodes of the dynamic peer-to-peer network consume the same content

26   within a predetermined time and that the distribution of P2P content delivery is based on content

27   segmentation and the content segmentation is based on CDN address resolution, trace route to

28   Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS
13

United States District Court
Northern District of California

United States District Court
Northern District of California

1    CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between

2    individual peer and its neighbors, round-robin, and other server side scheduling/resource

3    allocation techniques")[1].  CEI's assertion that "the patentee taught those of ordinary skill in the art

4    how to manipulate the prior art systems in a new, unexpected way: using the means of testing the

5    pathways instead as a means to distribute data in a virtual network outside the control of the CDN"

6    is not supported by the portion of the specification CEI cites for that proposition, which says

7    nothing at all about trace routes.  *Compare* Dkt. No. 20 at 13–14 *with* '452 patent at 5:38-48.

8            All that is left of claims 1 and 5 beyond the abstract idea of preparing and transmitting data

9    using the conventional technology and methods of generic computers, a P2P network, and

10   segmentation of data for transmission is the consumption of common content by peers at the same

11   time and claim 5's automatic identification of a peer node in close proximity to the client

12   requesting data.  But the '452 patent does not explain *how* either of these results are accomplished;

13   it simply states that it is.  '452 patent at 4:52-58 ("The content recipients have a peerness

14   established and/or defined by the common content they are receiving from the CDN server; the

15   systems and methods automatically identify peer nodes receiving common content and create

16   dynamic network communication connection for the peer nodes to transmit that common content

17   to each other . . . ."); *id.* at 5:44-48 ("The content delivery server further identifies those peer

18   nodes that are in close network proximity to each other and uses them to distribute content to each

19   other to create more efficient content delivery thereby.").  The patent repeatedly states that "the

20   peerness of the peer nodes is defined by their common content," *see, e.g.*, *id.* at 6:46-63, but there

21   is no explanation in the specification or the claims of how the content delivery server computer or

22   a peer node would recognize that other peer nodes are consuming the same content.  Similarly, the

23   specification broadly asserts:

24           While proximity of physical location is important, it is primarily the

25

26   [1] The amended complaint quotes from the file history of the '452 patent, and therefore incorporates
     the file history by reference, allowing the Court to properly consider the file history in ruling on this
27   Rule 12(b)(6) motion.  *Khoja*, 899 F.3d at 998.

28   Case No.: 5:20-cv-07273-EJD
     ORDER GRANTING MOTION TO DISMISS
     14

United States District Court
Northern District of California

1
2
3
4

> network proximity or network distance that is also used to determine the dynamic P2P networks among peer nodes, based upon the network routing required.  Groups are preferably within the same subnetwork of an internet service provider (ISP) for the nodes.  Also, load balancing is a factor considered in determining the dynamic P2P networks. A content delivery network where the video content originates includes a series of servers; preferably, the closest network distance to those is included in the dynamic P2P networks.

5  *Id.* at 6:20-30.  The patent does not explain how the content delivery server computer or a peer

6  node transmitting data would recognize other nodes in close network proximity.  Such results-

7  based claims using only conventional technology do not render claims patent-eligible.  *See Affinity*

8  *Labs*, 838 F.3d at 1263 (holding that claim is not patent-eligible at step two because "it does not

9  provide an inventive solution to a problem in implementing the idea of remote delivery of regional

10  broadcasting; it simply recites that the abstract idea of remote delivery will be implemented using

11  the conventional components and functions generic to cellular telephones"); *Alice*, 573 U.S. at 223

12  (holding that reciting an abstract idea "while adding the words 'apply it'" is not enough for patent

13  eligibility at step two) (citation omitted).

14      Accordingly, the Court finds that the '452 patent lacks an inventive concept at step two

15  and is patent-ineligible under § 101.  Because the Court finds that the '452 patent is invalid under

16  § 101, it does not address Kollective's argument under Rule 12(b)(6) that CEI has failed to

17  adequately allege that the SD ECDN product practices each and every limitation of the asserted

18  claims.

19  **IV.    CONCLUSION**

20      Because the '452 patent is directed to patentable ineligible subject matter under § 101, the

21  Court GRANTS Kollective's motion to dismiss.  CEI did not request leave to amend, and because

22  the Court finds that amendment would be futile, the complaint is DISMISSED without leave to

23  amend.

24      **IT IS SO ORDERED.**

25  Dated: June 21, 2021

26

27

EDWARD J. DAVILA
United States District Judge

28  Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS

15