Michael S. Dowler, TX SBN 00783979 (*pro hac vice*)
Email: mike@parklegal.com
PARK, VAUGHAN, FLEMING & DOWLER, LLP
1980 Post Oak Boulevard, Suite 2300
Houston, TX 77056
Telephone: (713) 443-6866

Michael W. Stebbins, SBN 138326
Email: mws@svlg.com
Stephen S. Wu, SBN 205091
Email: ssw@svlg.com
Marc G Van Niekerk, SBN 201329
Email: mvn@svlg.com
SILICON VALLEY LAW GROUP
1 North Market Street, Suite 200
San Jose, CA 95113
Telephone: (408) 573-5700
Facsimile: (408) 573-5701

Attorneys for Defendant
KOLLECTIVE TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| COOPERATIVE ENTERTAINMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KOLLECTIVE TECHNOLOGY, INC.,<br><br>Defendant. | Case No. 5:20-cv-07273-EJD<br><br>DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)<br><br>Date:    June 1, 2023<br>Time:    9:00 a.m.<br>Place:    Courtroom 4, 5th Floor |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 1, 2023, at 9:00 a.m., or as soon thereafter as the motion may be heard in the courtroom of The Honorable Edward J. Davila, located at Robert F. Peckham Federal Building & United States Courthouse, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California 95113, Defendant Kollective Technology, Inc. ("Kollective") will and hereby does move for dismissal with prejudice of all claims in Plaintiff Cooperative Entertainment, Inc.'s ("CEI's") Amended Complaint for Patent Infringement (Dkt. No. 18) pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Amended Complaint fails to properly plead its infringement claims under the prevailing *Twombly/Iqbal* pleading standard as applied in this District and by this Court.  This Motion is based upon this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Michael S. Dowler, filed concurrently herewith, and the pleadings and papers filed herein.

Date:  February 24, 2023

Respectfully submitted,

SILICON VALLEY LAW GROUP

*/s/ Stephen S. Wu*
Stephen S. Wu

Attorneys for Defendant
KOLLECTIVE TECHNOLOGY, INC.

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>:

I.      PROCEDURAL BACKGROUND…………………………………………………..1

II.     SUMMARY OF THE ARGUMENT………………………………………………...1

III.    STATEMENT OF THE FACTS………………………………………………………..2

IV.     LEGAL STANDARD FOR A MOTION TO DISMISS…..………………………………...6

V.      THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILING
        THE *TWOMBLY/IQBAL* STANDARD IN PATENT CASES………………………....8

        A.      '452 Patent, Claim 1………………………………...……………………………8

        B.      '452 Patent, Claims 2-3…………………………………………………...14

        C.      '452 Patent, Claim 5……………………………………………………...14

VI.     CONCLUSION…………………………………………………………………….22

1

2

## <u>TABLE OF AUTHORITIES</u>

<b>Page(s):</b>

3

### <u>Federal Cases</u>:

4

5

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)……………………………………….1, 2, 6, 7, 8, 10, 13, 14, 15, 19, 20, 21

6

*Atlas IP, LLC v. Exelon Corp.*
   2016 WL 2866134 (N.D. Ill. May 17, 2016)…………………………………………..14, 21

7

8

*Atlas IP, LLC v. Pacific Gas and Electric Co.*
   2016 WL 1719545 (N.D. Cal. Mar. 9, 2016)…………………………………….7, 9, 12, 17

9

10

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)…………………………………….1, 2, 6, 7, 8, 13, 14, 15, 16, 19, 20, 21

11

12

*BMC Res., Inc. v. Paymentech, L.P.*
   498 F. 3d 1373 (Fed. Cir. 2007)……………………………………………………..15, 16

13

*Cuvillier v. Taylor*
   503 F. 3d 397 (5th Cir. 2007)…………………………………………………….....19

14

15

*e.Digital Corp. v. iBaby Labs, Inc.*
   2016 WL 4427209 (N.D. Cal. Aug. 22, 2016)…………………………………….7, 9, 12, 17

16

17

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
   896 F. 2d 1542 (9th Cir. 1989)………………………………………………...7, 10

18

*Khoja v. Orexigen Therapeutics*
   899 F. 3d 988 (9th Cir. 2018)………………………………………………….7, 10

19

20

*Laitram Corp. v. Rexnord, Inc.*
   939 F. 2d 1533 (Fed. Cir. 1991)…………………………………………………...14, 21

21

22

*Novitaz, Inc. v. InMarket Media, LLC*
   2017 WL 2311407 (N.D. Cal. May 26, 2017)…………..2, 8, 9, 11, 12, 13, 14, 17, 18, 19, 20, 21

23

24

*PersonalWeb Tech. LLC v. Google LLC*
   2020 WL 520618 (N.D. Cal. January 31, 2020)……………………………………………….3

25

*Seoul Semiconductor Co., Ltd. v. Finelite, Inc.*
   (N.D. Cal. January 23, 2023)…………………………………………………..10, 13, 18, 20

26

27

*Sipco, LLC, IP Co., LLC v. Streetline, Inc.*
   2017 WL 10795601 (D. Del. Jun. 21, 2017)……………………………………….....22

28

**Page(s):**

*Sprewell v. Golden State Warriors*
   266 F. 3d 979 (9th Cir. 2001)……………………………………………...10, 18

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*
   870 F. 2d 1546 (Fed. Cir. 1989)……………………………………………14


**Federal Statutes:**

Fed. R. Civ. Pro., Rule 12(b)(6)……………………………………………7

Fed. R. Civ. Pro., Rule 15(a)……………………………………………2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PROCEDURAL BACKGROUND

Kollective previously moved to dismiss CEI's original Complaint, to which CEI responded by filing an Amended Complaint (Dkt. No. 18).  Kollective then withdrew its original motion and filed a second/substitute motion to dismiss (Dkt. No. 19).  The second motion was premised on two independent grounds: (1) invalidity of CEI's asserted patent due to unpatentable subject matter; and (2) the Amended Complaint's failure to adequately plead patent infringement under the prevailing *Twombly/Iqbal* pleading standard.  (*Id*.)  The Court granted the motion to dismiss, finding CEI's patent invalid and deferring ruling on the adequacy of the pleadings since the invalidity finding was dispositive.  (Dkt. 24, Order at 15 ("Because the Court finds that the '452 patent is invalid under § 101, it does not address Kollective's argument under Rule 12(b)(6) that CEI has failed to adequately allege that the SD ECDN product practices each and every limitation of the asserted claims.").)

CEI appealed and the Court of Appeals for the Federal Circuit reversed.  This Court then held a scheduling conference on January 12, 2023, wherein it ordered the parties to re-brief the second part of Kollective's motion to dismiss (*i.e.,* the adequacy of the infringement pleadings) so the briefing would account for CEI's admissions to the Federal Circuit regarding the requirements of the asserted patent claims.

Accordingly, this is Kollective's renewed motion to dismiss.

### II.   SUMMARY OF THE ARGUMENT

CEI is a non-practicing entity that—based on its pleadings and settlement demands—appears to have brought this case to extract a "cost of litigation" settlement.  The enormous differences between CEI's asserted patent and Kollective's accused infringing product manifest themselves in CEI's Amended Complaint, which fails to plausibly plead patent infringement as

required by *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  Indeed, there are more than *two-dozen* separate instances in which the Amended Complaint fails to allege that Kollective practices an element of an asserted patent claim, where any *one* of those instances in each asserted claim suffices to warrant dismissal of that claim, as this Court found in *Novitaz, Inc. v. InMarket Media, LLC,* No. 16-cv-06795 (EJD), 2017 WL 2311407, *3 (N.D. Cal. May 26, 2017) (a complaint should be dismissed when it "does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied").

CEI's admissions to the Federal Circuit—while appealing the dismissal order—further highlight some of the Amended Complaint's more than *two-dozen* separate failures to adequately plead patent infringement.  Specifically, CEI repeatedly assured the Federal Circuit (as confirmed by two of the appellate judges) that its patent claims require a specific feature the Amended Complaint never alleges corresponds to anything in the accused Kollective product, as *Iqbal/Twombly* and this Court's precedent require.

Accordingly, this case should be dismissed and with prejudice because CEI already has used its "one" opportunity under Fed. R. Civ. P. 15(a) to amend its Complaint in light of allegations that it failed to properly allege a plausible case of patent infringement and it *still* fails—in dozens of respects—to do so.

## III.   STATEMENT OF FACTS

U.S. Patent No. 9,432,452 ("the '452 patent") was attached to the Amended Complaint and is entitled "Systems and Methods for Dynamic Networked Peer-To-Peer Content

Distribution."  (*See* Declaration of Michael S. Dowler, Ex. 1, '452 patent.[1])  Its claims are directed to "[p]eer-to-peer (P2P) dynamic networks and/or sub-networks for file sharing between peers receiving the same content."  (*Id*. at Abstract.)  As the Court previously stated, "the focus of the '452 patent is the preparation and transmission of content to peers through a computer network".  (Dkt. 24, Order at 6.)  CEI summarized it as "a better way of sharing content".  (Dkt. 20, Brief at 12.)

The '452 patent drawings illustrate how content/data is transmitted via the patented network.  Figure 2 (reproduced below on the left) shows conventional peer computers "a"-"n" requesting a file segment (such as a segment/portion of a movie) from a conventional content delivery network ("CDN")[2].  (Ex. 1 at 8:6-32.)  This occurs, for example, in situations where




each person sitting at one of the computers "a"-"n" wants to watch the same movie, *i.e.,* each requests the same movie segment from the same central repository of data/movies.  Figure 3 (reproduced above on the right) shows peer "a" requesting the file segment(s) that peers "b"-"e" previously received from the CDN.  (*Id*.)  Figures 4-9 (not reproduced here) likewise show the various peers "b"-"n" requesting file segments from each other.  (*Id*.)

By sharing file segments among the various peers, the peers do not need to burden the

---

[1] All exhibit references will be references to exhibits attached to the accompanying Declaration of Michael S. Dowler.

[2] The Court may recall having some familiarity with CDNs since that was the subject matter of a patent the Court found invalid in *PersonalWeb Tech. LLC v. Google LLC,* No. 5:13-cv-01317 (EJD), 2020 WL 520618 (N.D. Cal. January 31, 2020) (granting Rule 12 motion).

network connection to the CDN in order to retrieve the entire file/movie—they simply collect the various segments from each other and reconstitute the segments into a complete file.  (*Id.* at 4:55-60; 5:30-48.)  As the Court previously explained, this data sharing is akin to "students providing each other with photocopied chapters of a textbook instead of each student obtaining the textbook from the bookstore".  (Dkt. 24, Order at 7.)

It has been said that such file sharing among peers (as opposed to each peer requesting all of its content from the CDN) is an improved way of downloading and sharing content, which the '452 patent acknowledges has been well known for decades.  (*Id.* at 1:17-3:34.)  Indeed, Kollective's corporate predecessors have been patenting and licensing software practicing peer-to-peer technology since 2000 – 12 years before the '452 patent was filed.  (*Id.* at 1 ('452 application filed 2012).)

Claim 1 of the '452 patent is representative of its claims:

1.  A system for virtualized computing peer-based content sharing comprising:

at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network; and

at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes, wherein the multiplicity of peer nodes consume the same content within a predetermined time, wherein the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network, wherein the at least one P2P dynamic network is based on at least one trace route; wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network;

wherein the at least one content delivery server computer is operable to store viewer information, check content request, use the trace route to segment requested content, find peers, and return client-block pairs;

wherein distribution of P2P content delivery over the at least one P2P dynamic network is based on content segmentation;

wherein content segmentation is based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic

rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques.

(*Id*. at 10:25-54.)  This claim can be broken down into three main hardware components: (1) a content delivery server computer, (2) a peer-to-peer (P2P) dynamic network, and (3) a content distribution network (CDN), where the content delivery server is tasked with managing data sharing, and at least some P2P nodes are outside of the CDN and in communication with the content delivery server computer.  Essentially, the '452 patent describes two sets of computer networks (a "CDN" and a "P2P" network), where "at least one content delivery server computer" acts as a controller and prepares the data for sharing.  (*Id*.)

CEI's admissions to the Federal Circuit during its appeal of this Court's dismissal order further illustrate the requirements of the '452 patent claims.  CEI's appellate briefing and oral argument relied on the fact that the last "wherein" clause in the asserted patent claims requires content segmentation "based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin **and** other serve side scheduling/resource allocation techniques".  As CEI argued, "and means and", meaning that the claim requires segmenting data based on "all" of the recited methods/criteria.  (Ex. 2, CEI Br. at 22-23.)  Indeed, during oral argument two of the three Federal Circuit judges wanted to be very clear on this issue and that CEI would abide by its argument on remanded.

> Judge Moore:  So I guess this is kind of a – it seems like a dumb question; but when you say "and," you mean and such that the trace route has to be one of the things used in segmentation.  You don't mean or the trace route could be used or you could use the CDN and P2P server manager or you could use dynamic feedback or – when you say "and," you mean "and."  And in that way, you have required the trace route to be used as part of the segmentation process; is that correct?

> Ms. Addy:  That's correct, Your Honor.

(Ex. 3, Appeal Transcript at 8:17-9:2.)

Judge Stark:  If this case were to go forward – I just want to make sure I understand – your view of that last Wherein clause is that when – in order to practice the claim, you have to use all of those things that are listed.  That's what "and" meaning "and" means; is that right?

\*\*\*\*\*\*

Ms. Addy:  So, it has to use everything before the "and" and then it has to use its neighbors, round-robin, and then it says other server-side scheduling/resource allocation techniques.  So what we read that to be is kind of like a comprising clause.  So, it has to have everything in there with the "and" and then some other server-side scheduling/resource allocation technique that was known in the art.

Judge Stark:  So, does that still mean it has to use trace routes?

Ms. Addy:  Yes, it does because the "and" is prior to the trace routes.  It says: content segmentation is based on CDN address resolution, trace route to CDN, and P2P server; and these other things.

Judge Stark:  So, it has to use all those things before the "and" and then also use some other server-side scheduling/resource allocation technique in order to practice Claim 1?

Ms. Addy:  I think that's correct, Your Honor.

(Ex. 3, Appeal Transcript at 11:23-13:4.)

Accordingly, in order to properly allege that Kollective infringes the '452 patent claims, CEI must plausibly allege (in addition to all the other limitations of the asserted claims) that Kollective's accused product segments content "based on CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin **and** other server side scheduling/resource allocation techniques".  As shown below, CEI's failure to plead that is just *one* of at least *two-dozen* separate instances in which the Amended Complaint fails to allege that Kollective practices an element of an asserted patent claim, any *one* of which suffice to compel dismissal of an asserted claim under *Iqbal/Twombly*.

## IV.    LEGAL  STANDARD FOR A MOTION TO DISMISS

Under Federal Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal,* 556 U.S. 662, 687 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although factual allegations are taken as true, legal conclusions are given no deference.  *Id.* at 678.

A court generally may not consider any material beyond the pleadings for a Rule 12(b)(6) analysis.  However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion.  *Khoja v. Orexigen Therapeutics,* 899 F.3d 988, 998 (9th Cir. 2018); *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

When it comes to patent cases, as this Court found in *Novitaz,* a complaint should be dismissed as to a given patent claim when it "does not contain factual allegations that would permit a court to infer that a required element of the patent claim was satisfied".  2017 WL 2311407, *3 (N.D. Cal. May 26, 2017) (Davila, J.); *see also e.Digital Corp. v. iBaby Labs, Inc.,* 2016 WL 4427209, *3 (N.D. Cal. Aug. 22, 2016) (a plaintiff must "plausibly allege that the accused product practices each of the limitations found in at least one asserted claim"); *Atlas IP LLC v. Pacific Gas and Electric Co.,* 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016) ("Simply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation of any asserted claim or addressing all of the claim requirements, is insufficient.").

## V.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILING THE *TWOMBLY/IQBAL* STANDARD IN PATENT CASES

The Amended Complaint alleges that Kollective's SD ECDN product directly infringes claims 1-3 and 5 of the '452 patent (Dkt. 18 at 8-16), yet its allegations fail to meet the *Twombly/Iqbal* pleading standard by failing in more than *two-dozen* separate instances to plausibly allege that each element of any asserted claim is present in that product.  In some instances the Amended Complaint totally fails to address certain limitations, in other instances its allegations are conclusory and lack facts, and in still others it merely quotes (with no effort to explain) large portions of an SD ECDN article that have no plausible correlation to the asserted claim limitation.

Below, every infringement allegation in the Amended Complaint corresponding to every limitation in each of the asserted patent claims is analyzed.  As indicated, that analysis shows there are more than *two-dozen* instances of a complete disconnect between an asserted patent claim and the accused infringing product.  Any *one* of these more than *two-dozen* defects in each asserted patent claim warrants dismissal of such claim, as courts throughout this District—including this Court—have ruled in similar circumstances.

### A.    '452 Patent, Claim 1

Paragraphs 33-39 of the Amended Complaint contain the infringement allegations regarding claim 1 in the '452 patent.  (Dkt. 18 at 12-16.)

Paragraph 33 merely states "Kollective makes, uses, and sells the system claimed in claim 1 of the '452 patent, and then it quotes claim 1.  (Dkt. 18 at 12-13.)  As such, Paragraph 33 is conclusory and void of any facts, much less factual allegations sufficient to enable the Court to plausibly conclude a Kollective product includes each of the dozens of limitations in claim 1. *Iqbal*, 556 U.S. at 678 (conclusions are given no deference); *Twombly,* 550 U.S. at 570 (plaintiff must plead enough facts to state a claim to relief that is plausible on its face); *Novitaz,* 2017 WL

2311407, *3 (N.D. Cal. May 26, 2017) (Davila, J.) (dismissing patent complaint due to insufficient factual allegations); *e.Digital,* 2016 WL 4427209, *3 (N.D. Cal. Aug. 22, 2016) (same); *Atlas IP,* 2016 WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016) (same).

Next, Paragraph 34 lacks context to any portion of claim 1 and is largely unintelligible. (Dkt. 18 at 13.)  Paragraph 34 references "the Kollective app", but given the absence of factual allegations it is uncertain what the app is or how it relates to what CEI later refers to as the accused infringing SD ECDN product.  As such, Paragraph 34 precludes any plausible conclusion that the accused SD ECDN product meets any (much less all) of the limitations of claim 1. *Novitaz,* 2017 WL 2311407, *3; *e.Digital,* 2016 WL 4427209, *3; *Atlas IP,* 2016 WL 1719545, *2.

Paragraph 35 is directed to the preamble of claim 1, which provides "[a] system for virtualized computing peer-based content sharing".  (Dkt. 18 at 13; Ex. 1, 10:25-26.)  As the rest of claim 1 states, the claimed "system" is a hardware system comprising at least "a content delivery server computer" and "at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes".  (Ex. 1, 10:27-31.)  Nevertheless, the allegations in Paragraph 35 fail to advance any facts plausibly leading to the conclusion that the accused SD ECDN product is a "system" including any hardware component.  The absence of the requisite allegation is not surprising since a Kollective article linked in the Amended Complaint explains that SD ECDN is a software product, not a hardware product:

> Specifically, SD ECDN stands for Software Defined Enterprise Content Delivery Network.  Software Defined is a term that is increasingly used to describe solutions that deliver network capability in software that may have historically been delivered via hardware devices.  The ability for Software Defined solutions to be delivered in a fraction of the time, for a fraction of the cost of their hardware based predecessors has led to the rapid adoption of a wide range of Software Defined technologies in today's enterprise environment.

(Ex. 4 at 2 (linked article)[3]; *see e.g.,* Dkt. 18 at ¶ 36 (linked article).)  References in the article to a "client" or "company" are to Kollective's licensees/customers of the SD ECDN software, as become apparent when reading the article in context.  Accordingly, CEI's bare allegation that Kollective provides the claimed hardware "system" does not suffice to plausibly show SD ECDN includes the claimed "system" because: (1) the allegation is conclusory and therefore entitled to no deference; and (2) it is directly contradicted by the only evidence the Amended Complaint relies on.  *Iqbal*, 556 U.S. at 678 (2009) (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit*."); Seoul Semiconductor Co., Ltd. v. Finelite, Inc.,* Case No. 22-cv-02869-TLT (N.D. Cal. January 23, 2023), Order at 7-8 (dismissing patent complaint because allegations were contrary to other evidence of record) (Ex. 5).

Paragraph 36 is directed to the first element of claim 1 calling for:

> at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network.

(Dkt. 18 at 13; Ex. 1, 10:27-29.)  Paragraphs 37-38 are directed to the second element of claim 1. The Amended Complaint does not identify all of the limitations of that second element, instead it simply refers to them as "the functionality claimed in the '452 patent".  (Dkt. 18 at 14.)  Such shorthand reference does not do the second element justice, particularly in this context where the dispositive issue is whether the Amended Complaint makes a plausible, factual allegation regarding every limitation of that second element.  Accordingly, the full text of the second

---

[3] The Court may rely on this document since it is referenced in the Amended Complaint.  *Khoja,* 899 F.3d at 998 (9th Cir. 2018); *Hal Roach Studios,* 896 F.2d at 1555 n.19 (9th Cir. 1989).

element is reproduced below:

> *at least one peer-to-peer (P2P) dynamic network* including a multiplicity of peer nodes, *wherein the multiplicity of peer nodes consume the same content within a predetermined time*, wherein **the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network**, *wherein* **the at least one P2P dynamic network is based on at least one trace route**; wherein *the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network*.

(Ex. 1, 10:30-41 (emphasis added).)

Nowhere in Paragraphs 37-38 of the Amended Complaint will the Court find any reference to, much less factual recitation regarding, how the accused SD ECDN product meets any of the five above-emphasized portions of the second element of claim 1. (Dkt. 18 at 14.) The Amended Complaint merely quotes two long, disparate paragraphs of a Kollective article discussing the SD ECDN product's use of "hop counts" ("a measure of the network distance between two devices") and latency ("measuring round-trip speeds"). (Dkt. 18 at 14.) Nothing in those paragraphs even hints at the claimed subject matter, much less "map[s] this information onto any elements of [] the claims". *Novitaz,* 2017 WL 2311407, *4.

Specifically, nowhere do the quotes in Paragraphs 37-38 from the linked article suggest (as required by the second element of claim 1) that SD ECDN includes a "peer-to-peer network", much less a "dynamic" one. Nowhere do the quotes mention that SD ECDN includes a "multiplicity of peer nodes [that] consume the same content", much less "within a predetermined time". Nowhere do the quotes mention that SD ECDN includes a "multiplicity of peer nodes constructed and configured for electronic communication over the at least one P2P dynamic network". Nowhere do the quotes ever mention that SD ECDN includes a "P2P dynamic network [that] is based on at least one trace route". And, nowhere do the quotes mention that the (unmentioned) multiplicity of peer nodes "is distributed outside controlled networks" and/or that the (unmentioned) multiplicity of peer nodes "is distributed outside content distribution networks

1   (CDNs) that are included within the at least one communications network". (Dkt. 18 at 14.)

2       Accordingly, while perhaps giving the appearance of being "detailed" via its long

3   quotations, there is simply no logical or substantive correlation between the quotations in

4   Paragraphs 37-38 and the corresponding claim language, thereby preventing the Court from

5   concluding "that it is plausible that the [accused product] directly infringes [claim 1]". *Novitaz,*

6   2017 WL 2311407, *3; *e.Digital,* 2016 WL 4427209, *3; *Atlas IP,* 2016 WL 1719545, at *2

7   (recitation of elements of a representative claim along with a general description of the operation

8

9   of an accused product is insufficient).

10      Next, Paragraph 39 in the Amended Complaint is directed to the third, fourth, and fifth

11  elements of claim 1. (Dkt. 18 at 15-16.) Once again, however, the Amended Complaint fails to

12  identify all of the limitations of those claim elements, instead simply referring to them as "content

13  segmentation". (Dkt. 18 at 15.) This high-level expression, void of detail, fails to properly allege

14  that the accused product practices each of the third, fourth, and fifth elements of claim 1,

15

16  particularly in this context where the dispositive issue is whether the Amended Complaint makes

17  a plausible, factual allegation regarding each of the numerous limitations in those claim elements.

18  Accordingly, the full text of the third, fourth, and fifth elements of claim 1 is reproduced below:

19

20      ***wherein the at least one content delivery server computer is operable to store
        viewer information, check content request, use the trace route to segment
        requested content, find peers, and return client-block pairs***;

21

22      ***wherein distribution of P2P content delivery over the at least one P2P content
        dynamic network is based on content segmentation***;

23

24      ***wherein content segmentation is based on CDN address resolution, trace route
        to CDN and P2P server manager, dynamic feedback from peers reporting
        traffic rates between individual peer and its neighbors, round-robin and other
        server side scheduling/resource allocation techniques***.

25

26  (Ex. 1, 10:42-54 (emphasis added).)

27      Nowhere in Paragraph 39 will the Court find any reference to, much less factual recitation

28

---

Defendant's Motion to Dismiss
Amended Complaint

- 12 -

Case No. 5:20-cv-07273-EJD

regarding, how the accused SD ECDN product meets *any* of the numerous limitations in the third, fourth, and fifth elements of claim 1.  (Dkt. 18 at 15-16.)  The Amended Complaint once again merely quotes two disparate paragraphs of the same Kollective article discussing how "agents in a mesh" apprise themselves of their network surroundings for live streaming video and VoD (video on demand).  (*Id.*)

Like before, the substantive nature of the claim language and the quoted material are so different from each other that nothing in Paragraph 39 even hints at the claimed subject matter, much less "map[s] this information onto any elements of [] the claims," as required to meet *Twombly/Iqbal*.  *Novitaz,* 2017 WL 2311407, *4.  Specifically, nowhere do the quotes in Paragraph 39 suggest SD ECDN includes a content delivery server computer operable to do any, much less all, of the following claim limitations: (1) store viewer information; (2) check content requests; (3) use the trace route to segment requested content; (4) find peers; and (5) return client-block pairs.  Nowhere do the quotes suggest that SD ECDN's distribution (of P2P content delivery over a P2P content dynamic network) is based on content segmentation.  And, nowhere do the quotes suggest that SD ECDN segments content based on any one of, ***much less all of***: CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin ***and*** other server side scheduling/resource allocation techniques, which CEI told the Federal Circuit was the key to the patentability of its invention.  *Supra* at 5-6 (CEI and the Federal Circuit agreeing that "and means and").  The Amended Complaint is utterly (and fatally) silent about all of this, even in connection with the exact detail CEI assured the Federal Circuit was the key to the validity of its patent claims.  *Seoul Semiconductor,* Case No. 22-cv-02869-TLT (N.D. Cal. January 23, 2023), Order at 7-8 (dismissing patent complaint because allegations were contrary to other evidence of record) (Ex. 5).  Accordingly, there is simply no logical or substantive correlation between the

quotes in Paragraph 39 and the corresponding language of claim 1, thereby preventing the Court from concluding "that it is plausible that the [accused product] directly infringes [claim 1]". *Novitaz,* 2017 WL 2311407, *3; *e.Digital,* 2016 WL 4427209, *3; *Atlas IP,* 2016 WL 1719545, *2.

For the foregoing reasons, Kollective submits that the allegations in the Amended Complaint directed to claim 1 warrant dismissal since even a *single* instance of the Amended Complaint failing to plausibly correlate any *one* of the at least *twenty* above-noted missing claim limitations to the SD ECDN product violates the *Twombly/Iqbal* pleading standard.  *Novitaz, 2017 WL 2311407, *3-4; Atlas IP, LLC v. Exelon Corp.,* No. 15-cv-10746, 2016 WL 2866134, at *5 (N.D. Ill. May 17, 2016) ("[F]actual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement…"); *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("the failure to meet a single limitation is sufficient to negate infringement of [a] claim.").

### B.    '452 Patent, Claims 2-3

Paragraphs 40-41 of the Amended Complaint correspond to claims 2-3 in the '452 patent, respectively.  (Dkt. 18 at 16-17.)  Since claims 2-3 depend from claim 1 (thereby incorporating all of the limitations of claim 1), and, as shown above, the Amended Complaint does not properly allege infringement of claim 1, the Amended Complaint cannot possibly articulate infringement of claims 2-3 under *Twombly/Iqbal*.  *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("a dependent claim includes all the limitations of the claim from which it depends").  Accordingly, the Amended Complaint fails the *Twombly/Iqbal* standard for claims 2-3 for at least the same reasons described above for claim 1.

### C.    '452 Patent, Claim 5

Paragraphs 28-32 of the Amended Complaint contain the infringement allegations

regarding claim 5.   (Dkt. 18 at 8-12.)   These allegations suffer the same pleading defects mentioned above with respect to claims 1-3 in that they fail to plausibly allege, in compliance with *Iqbal/Twombly*, that Kollective performs each of the numerous limitations of claim 5.  Every allegation in the Amended Complaint corresponding to claim 5 is analyzed below.

Paragraph 28 is directed to the preamble of claim 5 calling for "[a] method for virtualized computing peer-based content sharing comprising the steps of".   (Dkt. 18 at 8, Ex. 1, 10:62-63.)  Claim 5 goes on to require performing steps such as "providing at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes", "the at least one content delivery server computer receiving at least one content request from a client", and "at least one peer node most proximal to the client sharing the at least one segment of the requested content".  (Ex. 1, 10:62-11:26.)   Because claim 5 is a method claim and it can only be infringed by the entity that performs all of the claim's steps, it is important to understand who provides the claimed P2P network, its peer nodes, and who the claimed "client" is.  *See BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373, 1379-81 (Fed. Cir. 2007) (direct infringement of a method claim occurs only where all steps of a claimed method are performed by a single entity).

That entity is *not* Kollective.  As shown by the evidence the Amended Complaint relies on, Kollective licenses its SD ECDN software to clients/customers who then use the software to distribute data within their organizations.

> Specifically, SD ECDN stands for Software Defined Enterprise Content Delivery Network.   Software Defined is a term that is increasingly used to describe solutions that deliver network capability in software that may have historically been delivered via hardware devices.

(Ex. 4 at 2 (linked article); *see e.g.,* Dkt. 18 at ¶ 29 (linking article).)

> The largest, most successful, global companies trust Kollective Technology to power their Enterprise Live and On-Demand video delivery, serving millions of users worldwide.

(Ex. 4 at 11.)   As such, references in the article to a "client" or "company" are to the

licensees/customers of the SD ECDN software, as become apparent when reading the article in context.   Accordingly, it is Kollective's customers—not Kollective—who may perform the claimed methods steps such as "providing at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes" and "at least one peer node most proximal to the client sharing the at least one segment of the requested content".  (*Id.*)

The significance of this is dispositive with respect to claim 5.  Namely, CEI's allegation in Paragraph 28 that "Kollective SD ECDN practices each step of Claim 5" fails to plausibly accuse Kollective of infringement since the infringer of a method claim is not a product but rather the entity that actually implements the claimed method steps by operating that product.  *BMC,* 498 F.3d at 1379-81 (Fed. Cir. 2007).  Here, as the evidence the Amended Complaint relies on shows, that entity is Kollective's customers—not Kollective.  This is not an acknowledgement that a client's operation of SD ECDN practices all of the steps of claim 5, but rather that there is a fatal defect in the Amended Complaint as it concerns claim 5*, i.e.,* Kollective is not, and cannot legally be, a direct infringer as the Amended Complaint asserts.  (Dkt. 18 at ¶ 26 ("Kollective has been and is directly infringing claims of the '452 patent.").)[4]  For this reason alone, the allegations concerning claim 5 fail to plausibly plead a cause of action against Kollective and should be dismissed.  *Twombly,* 550 U.S. at 570.

Next, Paragraph 29 is directed to the first and second elements of claim 5.  The full text of the second element is reproduced below:

> **providing at least one peer-to-peer (P2P) dynamic network** *including a* **multiplicity of peer nodes constructed and configured for electronic**

_____

[4] Kollective is not accused of indirect infringement, such as inducing or contributing to another's infringement (Dkt. 18 at ¶ 26), nor could it be since as shown below CEI's pleading fails to allege that the accused SD ECDN product practices any of the other elements of claim 5 irrespective of who operates the accused software.

*communication over the at least one P2P dynamic network*, wherein *the multiplicity of peer nodes consume the same content within a predetermined time*, wherein *the at least one P2P dynamic network is based on at least one trace route; wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network*.

(Ex. 1, 10:64-11:12 (emphasis added).)

Nowhere in Paragraph 29 will the Court find any reference to, much less factual recitation regarding, how the accused SD ECDN product meets any of the five above-emphasized portions of the second element of claim 5. (Dkt. 18 at 9-10.) The Amended Complaint merely quotes two long, disparate paragraphs of the same Kollective article discussing how "agents in a mesh" monitor their surroundings to better deliver data. (Dkt. 18 at 9-10.)

Specifically, nowhere do the quotes in Paragraph 29 suggest SD ECDN includes the claimed "peer-to-peer network", much less a "dynamic" one. Nowhere do the quotes mention that SD ECDN includes a "multiplicity of peer nodes constructed and configured for electronic communication over the at least one P2P dynamic network". Nowhere do the quotes mention that SD ECDN includes a "multiplicity of peer nodes [that] consume the same content", much less "within a predetermined time". Nowhere do the quotes ever mention that SD ECDN includes a "P2P dynamic network [that] is based on at least one trace route". And, nowhere do the quotes mention that the (unmentioned) multiplicity of peer nodes "is distributed outside controlled networks" and/or that the (unmentioned) multiplicity of peer nodes "is distributed outside content distribution networks (CDNs) that are included within the at least one communications network".

Accordingly, there is simply no logical or substantive correlation between the quotes in Paragraphs 29 and the corresponding claim language, thereby preventing the Court from concluding "that it is plausible that the [accused product] directly infringes [claim 5]". *Novitaz,* 2017 WL 2311407, *3; *e.Digital,* 2016 WL 4427209, *3; *Atlas IP,* 2016 WL 1719545, *2.

Paragraph 30 is directed to the third element of claim 5, which calls for "the at least one

content delivery server computer receiving at least one content request from a client". (Dkt. 18 at 10, Ex. 1, 11:12-13.)  The Amended Complaint fails to plausibly allege a case of infringement in connection with this third element for two independent reasons.

First, as explained above in connection with the SD ECDN article linked in the Amended Complaint, Kollective licenses its SD ECDN software to customers who then implement the software in their corporate environments. *Supra* at 15-16 (citing article relied on by the Amended Complaint).  As such, any claimed "content request from a client" is a request made by a client computer in Kollective's customer's organization, not by Kollective.  Consequently, Kollective cannot be a direct infringer because it did not perform the method claim step, and any allegation to the contrary is not plausibly supported by the only evidence relied on by the Amended Complaint.  *Sprewell*, 266 F.3d at 988 (9th Cir. 2001); *Seoul Semiconductor,* Case No. 22-cv-02869-TLT (N.D. Cal. January 23, 2023), Order at 7-8 (Ex. 5).

Second, as indicated, the third element of claim 5 is directed to a content delivery server receiving a content request from a client.  (Ex. 1, 11:12-13.)  Contrary to the plain language of the claim element, the only allegation the Amended Complaint makes is directed to a network administrator controlling how an agent seeks content from peers.  (Dkt. 18 at 10 ("Network administrators can set how widely a specific group of agents is allowed to look for effective peers for the specific content item requested.").)  Thus, there is no correlation between the claim language and the allegation—the claim relates to a content delivery server receiving a client request, whereas the allegation relates to a network administrator controlling how an agent seeks peer content.  Nor does the Amended Complaint make any effort to factually reconcile this complete disconnect.  As such, the allegation does not plausibly support a claim for patent infringement.  *Novitaz*, 2017 WL 2311407, *3 ("if a complaint does not contain factual allegations that would permit a court to infer that a required element of the patent claim was

satisfied, it is hard to see how infringement would be 'probable'"); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.").

Paragraph 31 is directed to the fourth element of claim 5, which calls for:

> *the at least one content delivery server computer segmenting requested content based on CDN address resolution, trace route to CDN and the P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, and other server side scheduling/resource allocation techniques*.

(Ex. 1, 11:14-20 (emphasis added).)  Nowhere in Paragraph 31 of the Amended Complaint will the Court find any reference to, much less factual recitation regarding, how the accused SD ECDN product meets *any* of the numerous limitations in the fourth element of claim 5.  The Amended Complaint once again merely quotes a long, disparate paragraph from the same Kollective article discussing the SD ECDN product's use of "hop counts" ("a measure of the network distance between two devices") and latency ("measuring round-trip speeds").  (Dkt. 18 at 11.)

Like before, the substantive nature of the claim language and the quoted material are so different from each other that nothing in Paragraph 31 even hints at the claimed subject matter, much less "map[s] this information onto any elements of [] the claims," as required to meet *Twombly/Iqbal*.  *Novitaz,* 2017 WL 2311407, *4.  Specifically, nowhere does the quote suggest that SD ECDN segments content based on any one of, *much less all of*:  CDN address resolution, trace route to CDN and P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin *and* other server side scheduling/resource allocation techniques, as CEI told the Federal Circuit that the presence of *all* of these items was the key to the patentability of its invention.  *Supra* at 5-6 (CEI and the Federal Circuit agreeing

---

Defendant's Motion to Dismiss
Amended Complaint

Case No. 5:20-cv-07273-EJD

that "and means and").  The Amended Complaint alleges nothing at all about these items, even in connection with the exact detail CEI assured the Federal Circuit was the key to the validity of its patent claims, which dooms Plaintiff's allegations as to claim 5.  *Seoul Semiconductor,* Case No. 22-cv-02869-TLT (N.D. Cal. January 23, 2023), Order at 7-8 (dismissing patent complaint because allegations were contrary to prior representations to patent tribunal) (Ex. 5).

Paragraph 32 in the Amended Complaint is directed to the fifth element of claim 5, which calls for:

> automatically identifying at least one peer node having at least one segment of the requested content in close network proximity to the client.

(Ex. 1, 11:22-24.)  Paragraph 32 alleges that the SD ECDN product meets this fifth claim element because "[t]he hop count method approximates whether an agent can peer from the LAN or not." Comparing the claim language to the infringement allegation shows there is no substantive or logical correlation between the claim language and "the hop count method".  The fifth claim element is directed to automatically identifying a peer node having a segment of the requested content in proximity to another client/peer, whereas CEI's reference to the SD ECDN article is limited to a discussion of a "hop count method" that assesses whether or not an agent can peer from the LAN.  (Dkt. 18 at 12.)  Nor does the Amended Complaint make any effort to factually reconcile this complete disconnect.  Still further, there is no articulation in the Amended Complaint tying the hop count method to the requirements of the fifth claim element being "automatic," no discussion of it being used to determine whether "a peer node has at least one segment of the requested content," and no discussion of whether it determines whether a peer node is "in close network proximity to the client".  These complete disconnects between the claim language and the allegation in the Amended Complaint, especially when combined with the absence of any explanation, fails the *Twombly/Iqbal* analysis.  *Novitaz,* 2017 WL 2311407, *3.

Finally, Paragraph 32 in the Amended Complaint also is directed to the sixth element of

Claim 5, which calls for:

> at least one peer node most proximal to the client sharing the at least one segment
> of the requested content.

(Ex. 1, 11:24-25.)   Paragraph 32 alleges that the SD ECDN product meets this claim element because "[p]eering within 3 or 4 hops is usually within a LAN environment, so allowing higher hop counts typically means an agent will peer across a WAN segment which, in most cases, is not desirable."  (Dkt. 18 at 12.)  Once again, there is no substantive or logical correlation between the claim language and requisite infringement "mapping."   The sixth claim element is directed to a peer node "most proximal to the client" sharing content, whereas the Amended Complaint's reference to the SD ECDN article is limited to an unexplained quote indicating that peering across a WAN segment is not desirable.  As before with other claim elements this disconnect, especially when combined with the complete absence of any explanation, fails the *Twombly/Iqbal* analysis. *Novitaz,* 2017 WL 2311407, *3.

For the foregoing reasons, Kollective submits that the allegations in the Amended Complaint directed to claim 5 warrant dismissal since even a *single* instance of the Amended Complaint failing to plausibly correlate any *one* of the at least *nineteen* above-noted missing claim limitations to the SD ECDN product violates the *Twombly/Iqbal* pleading standard. *Novitaz, 2017 WL 2311407,* *3-4; *Atlas IP, LLC v. Exelon Corp.,* No. 15-cv-10746, 2016 WL 2866134, at *5 (N.D. Ill. May 17, 2016); *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("the failure to meet a single limitation is sufficient to negate infringement of [a] claim.").  As one district judge commented, this complete lack of analysis (as described above for each of claims 1, 2-3, and 5) warrants dismissal.

> I think it is incumbent on a plaintiff to provide a readable document that plausibly
> alleges infringement.   [citation omitted]    There are numerous district court
> decisions that require, to plausibly state a claim for patent infringement, that the
> complaint relate its factual allegations to an asserted claim of the patent.  [string

cite omitted]  I do not think providing me a copy of the patent and a description of the product, at least in this case, meets the required standard.

*Sipco, LLC, IP Co., LLC v. Streetline, Inc.,* No. 16-830 (RGA), 2017 WL 10795601, *2 (D. Del. Jun 21, 2017).

## VI.    CONCLUSION

For the foregoing reasons, Kollective respectfully requests that the Court dismiss CEI's Amended Complaint for failure to state a claim upon which relief can be granted.  Because CEI has already amended its Complaint once in response to Kollective's first Motion to Dismiss, Kollective requests dismissal with prejudice.

Date: February 24, 2023               Respectfully submitted,

                                      SILICON VALLEY LAW GROUP

                                      */s/ Stephen S. Wu*
                                      Stephen S. Wu

                                      Michael W. Stebbins, SBN 138326
                                      Email:  mws@svlg.com
                                      Stephen S. Wu, SBN 205091
                                      Email:  ssw@svlg.com
                                      Marc G. Van Niekerk, SBN 201329
                                      Email:  mvn@svlg.com
                                      SILICON VALLEY LAW GROUP
                                      1 North Market Street, Suite 200
                                      San Jose, CA 95113
                                      Telephone:  (408) 573-5700
                                      Facsimile:   (408) 573-5701

                                      Michael S. Dowler, TX SBN 00783979 (*pro hac vice*)
                                      PARK, VAUGHAN, FLEMING & DOWLER, LLP
                                      Email:  mike@parklegal.com
                                      1980 Post Oak Boulevard, Suite 2300
                                      Houston, TX 77056
                                      Telephone:  (713) 443-6866

                                      Attorneys for Defendant Kollective Technology, Inc.

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3

The undersigned certifies that on February 24, 2023, the foregoing document as

4

electronically filed with the Clerk of the court for the United States District Court, Northern

5

District of California, using the Court's Electronic Case Filing (ECF) system.  The ECF system

6

routinely sends a "notice of Electronic Filing" to all counsel of record who have consented to

7

accept this notice as service of this document by electronic means.  Any party not receiving the

8

Court's electronic notification will be sent a copy of the foregoing document.

9

10

/s/ *Stephen S. Wu*

11

Stephen S. Wu

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Motion to Dismiss
Amended Complaint

- 23 -

Case No. 5:20-cv-07273-EJD