1

2

3

4               UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6                   SAN JOSE DIVISION

7

8    COOPERATIVE ENTERTAINMENT,          Case No.  5:20-cv-07273-EJD
     INC.,
9                                         **ORDER GRANTING MOTION TO**
            Plaintiff,                    **DISMISS**
10
       v.
11                                        Re: Dkt. No. 51
     KOLLECTIVE TECHNOLOGY, INC.,
12
            Defendant.
13         Plaintiff, Cooperative Entertainment, Inc., ("CEI") brings this suit against Defendant,

14   Kollective Technology, Inc., ("Kollective") for infringement of U.S. Patent No. 9,432,452 ("the

15   '452 Patent").  Second Am. Compl. ("SAC"), ECF No. 49.  Before the Court is Kollective's

16   motion to dismiss CEI's Second Amended Complaint ("SAC") for failure to state a claim.  Mot. to

17   Dismiss ("MTD"), ECF No. 51.  CEI filed an opposition, and Kollective filed a reply.  Opp'n,

18   ECF No. 55; Reply, ECF No. 56.

19         Having carefully considered the Parties' moving papers, the Court finds this motion

20   suitable for consideration without oral argument pursuant to Civ. L.R. 7-1(b).  The Court finds that

21   CEI has failed to cure the deficiencies identified in the Court's prior Order granting Kollective's

22   motion to dismiss CEI's First Amended Complaint ("Prior Order").  Order Granting Mot. to

23   Dismiss ("Prior Order"), ECF No. 47.  For the following reasons, the Court **GRANTS**

24   Kollective's motion to dismiss without leave to amend.

25   **I.    BACKGROUND**

26         This is Kollective's third motion to dismiss.  *See* ECF Nos. 19, 41.  In the interest of

27   brevity, the Court will only summarize those facts relevant to this motion.

28   Case No.: 5:20-cv-07273-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

CEI is the owner of the '452 Patent, entitled "Systems and Methods for Dynamic Networked Peer-to-Peer Content Distribution."  SAC, Ex. B ("'452 Patent").  The '452 Patent relates to systems and methods of structuring a peer-to-peer ("P2P") dynamic network for distributing large files.  *Id.* ¶ 16.  It claims methods and systems for a network in which content distribution occurs "outside controlled networks and/or content distribution networks (CDNs)."  *Id.* ¶ 23.  It does this with dynamic P2P networks comprising of "peer nodes," i.e., nodes consuming the same content contemporaneously, that transmit content directly to each other instead of receiving content from the CDN.  *Id.* ¶¶ 22, 23.  To facilitate content distribution, the claimed P2P networks segment content combining several unconventional techniques, including "CDN address resolution, trace route to CDN and the P2P server manager, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, other server side scheduling/resource allocation techniques, and combinations thereof."  *Id.* ¶ 35.

The '452 Patent includes two independent claims, claims 1 and 5, from which all other claims depend.  Claim 1 claims:

> 1. A system for virtualized computing peer-based content sharing comprising:
>
> at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network; and
>
> at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes, wherein the multiplicity of peer nodes consume the same content within a predetermined time, wherein the multiplicity of peer nodes are constructed and configured for electronic communication over the at least one P2P dynamic network, **wherein the at least one P2P dynamic network is based on at least one trace route**; wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network;
>
> wherein the at least one content delivery server computer is operable to store viewer information, check content request, **use the trace route to segment requested conten**t, find peers, and return client-block pairs;
>
> wherein distribution of P2P content delivery over the at least one

United States District Court
Northern District of California

P2P dynamic network is based on content segmentation;

wherein content segmentation is based on CDN address resolution, **trace route to CDN and P2P server manager**, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin and other server side scheduling/resource allocation techniques.

'452 Patent at 10:25–49 (emphasis added).

Claim 5 is a method claim that recites:

5. A method for virtualized computing peer-based content sharing comprising the steps of:

providing at least one content delivery server computer constructed and configured for electrical connection and communication via at least one communications network;

providing at least one peer-to-peer (P2P) dynamic network including a multiplicity of peer nodes constructed and configured for electronic communication over the at least one P2P dynamic network, wherein the multiplicity of peer nodes consume the same content within a predetermined time, **wherein the at least one P2P dynamic network is based on at least one trace route**, wherein the multiplicity of peer nodes is distributed outside controlled networks and/or content distribution networks (CDNs) that are included within the at least one communications network;

the at least one content delivery server computer receiving at least one content request from a client;

the at least one content delivery server computer segmenting requested content based on CDN address resolution, **trace route to CDN and the P2P server manager**, dynamic feedback from peers reporting traffic rates between individual peer and its neighbors, round-robin, and other server side scheduling/resource allocation techniques;

automatically identifying at least one peer node having at least one segment of the requested content in close network proximity to the client; and

at least one peer node most proximal to the client sharing the at least one segment of the requested content.

*Id.* at 10:62–67, 11:1–26 (emphasis added).

Using a trace route in combination with the other claimed techniques to segment data is fundamental to the '452 Patent. In the SAC, CEI states that "[t]he '452 patent claims all require

1  segmenting the digital content according to the trace routes." SAC ¶ 20. The SAC also alleges

2  that claiming segmentation based on a trace route was one reason why the U.S. Patent Office

3  allowed the '452 Patent claims to issue over the prior art. *See, e.g.*, SAC ¶ 11 ("The novelty of the

4  '452 patent, the patentee argued to the U.S. Patent Office, was that the claims use these means of

5  testing to further segment the actual content being delivered: 'Specifically, traceroute as a type of

6  network traffic test in Weller does not suggest or indicate using trace route to segment requested

7  content.'").

8      Upon appeal of the Court's prior Order dismissing the complaint under Section 101, CEI

9  also repeatedly argued that the '452 Patent requires a trace route to be used as part of the

10 segmentation process. *See, e.g.*, MTD, Ex. 3, Appeal Transcript at 8:17–9:2 (Judge Moore:

11 "[Y]ou have required the trace route to be used as part of the segmentation process; is that

12 correct?" Ms. Andy: "That's correct, Your Honor."), 11:23–13:4 (Judge Stark: "So, does that still

13 mean it has to use trace routes?" Ms. Andy: "Yes, it does because the 'and' is prior to the trace

14 routes. It says: content segmentation is based on CDN address resolution, trace route to CDN, and

15 P2P server; and these other things."). The Federal Circuit presumably relied on these

16 representations when it held that using a trace route to segment content is one of the two identified

17 inventive concepts of the '452 Patent. *See Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127,

18 133–36 (Fed. Cir. 2022); *see also* SAC ¶ 14 ("The U.S. Patent Office allowed the '452 Patent

19 claims because the claims contained the complete engineering required to deliver content through

20 a P2P network segmented in [a] novel way.").

21     CEI alleges that Kollective's product, SD ECDN ("Accused Product"), infringes on the

22 '452 Patent. SAC ¶ 28. The Accused Product is essentially a software that uses P2P technology

23 to share content between devices in a large company. *See* SAC ¶¶ 28–46. CEI asserts that, when

24 used in conjunction with Microsoft Teams software, the Accused Product infringes claims 1, 2, 3,

25 and 5. *Id.*

26     The Court granted Kollective's first motion to dismiss on October 24, 2023, finding that

27 CEI failed to plead facts sufficient to state a claim for patent infringement because CEI did not

United States District Court
Northern District of California

allege that the Accused Product segments content based on a trace route. Prior Order 7–8. While the Court focused much of its analysis on CEI's failure to allege that the Accused Product segments content as an initial matter, the Court also found deficiencies in CEI's failure to allege that the Accused Product segments it content based on a trace route. *Id.* ("The Court cannot find any facts in CEI's complaint to support its allegation that Kollective facilitates content distribution by segmenting the content, apart from one conclusory sentence . . . . CEI attempts to support its allegation that SD ECDN uses trace routes to segment content by quoting, without explanation, [an excerpt] from Kollective's website . . . . However, the Court interprets this quote at this stage as stating that Kollective uses traceroutes to *gather information*, not to *segment content*. In the absence of any facts to suggest that SD ECDN performs one of the central functions of the '452 Patent, the Court must dismiss the complaint for failure to state a claim.").

In response to the Court's Prior Order, CEI amended its complaint by adding two paragraphs defining conventional segmentation, SAC ¶¶ 12, 13, and referring back to those paragraphs in two instances to allege that the Accused Product "relies on conventional protocols that segment video files," *id.* ¶¶ 35, 43.

On November 11, 2023, Kollective filed its third motion to dismiss in this case, arguing that CEI failed to cure the deficiencies identified in the Court's Prior Order, as well as failed to allege facts showing that the Accused Product uses various other techniques claimed in the '452 Patent. *See* MTD.

## II.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). When deciding whether to grant a motion to dismiss under Rule 12(b)(6), the court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id.* at 678

Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS

1   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must construe the

2   alleged facts in the light most favorable to the plaintiff.  *See Retail Prop. Trust v. United Bd. of*

3   *Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true

4   all factual allegations in the complaint and draw all reasonable inferences in favor of the

5   nonmoving party.").  However, courts "are not bound to accept as true a legal conclusion couched

6   as a factual allegation." *Iqbal*, 556 U.S. at 678.

7         If the court concludes that a 12(b)(6) motion should be granted, the "court should grant

8   leave to amend even if no request to amend the pleading was made, unless it determines that the

9   pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d

10  1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III.    DISCUSSION

12        In its Prior Order, the Court held that CEI failed to allege that the Accused Product

13  segments content based on a trace route.[1]  The SAC does not cure this deficiency.  First, while the

14  SAC includes additional facts defining segmentation and alleging upon information and belief that

15  the Accused Product segments content, the SAC failed to allege that the Accused Product

16  segments content based on a trace route.  Second, CEI alleges additional facts that are inconsistent

17  with and contradict CEI's infringement theory, thereby effectively "plead[ing] itself out of court."

18  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021).

### A.    Failure to Plausibly Allege Segmentation Based on Trace Routes

20        CEI wholly failed to include any additional facts which would indicate that the Accused

21  Product segments content based on a trace route.  The only instance where trace routes are

22  discussed in the SAC outside of descriptions of the '452 Patent is in the following quote from

23  Kollective's website, which remains unchanged from the prior complaint: "The agents in the mesh

---

[1] CEI erroneously presumes that, because the Court rested its holding on CEI's failure to allege facts to show that the Accused Product segments content based on a trace route, the Court found the remainder of the complaint sufficiently plead.  By declining to address Kollective's remaining arguments, the Court did not, as CEI states, "reject[] over 20 of Kollective's arguments."  Opp'n 1.  Finding dismissal warranted on one ground, the Court exercised its discretion to not address Kollective's remaining arguments.

United States District Court
Northern District of California

1    are constantly aware of their network surroundings. Utilizing pings and *traceroutes*, they gather

2    key information about the surrounding network by monitoring the location of other agents and

3    constantly gauging how local area links are performing." SAC ¶¶ 32, 44 (emphasis added). CEI

4    argues in its opposition that the "mesh" is the content delivery system; therefore, the quote reveals

5    that the content delivery system uses trace routes. Opp'n 4. However, the Court already

6    addressed this exact quote in its Prior Order:

> CEI attempts to support its allegation that SD ECDN uses trace routes
> to segment content by quoting, without explanation, the following
> from Kollective's website: "Utilizing pings and traceroutes, [the
> agents in the mesh] gather key information about the surrounding
> network by monitoring the location of other agents and constantly
> gauging how local area links are performing." Compl. ¶¶ 29, 39.
> However, the Court interprets this quote at this stage as stating that
> Kollective uses traceroutes to *gather information*, not to *segment
> content*.

12   Prior Order 7 (emphasis in original). The Court need not revisit this argument here. CEI has

13   included no additional facts in the SAC to address the Court's finding, nor any arguments in its

14   opposition urging the Court to interpret this quote any differently.

15        The remainder of CEI's opposition lends little aid to the Court's analysis. As the Court

16   noted in its Prior Order, CEI's various amended complaints have displayed the same pattern of

17   quoting large portions from Kollective's website, including quoting entire pages, with little to no

18   explanation of how the language shows that the Accused Product infringes on the '452 Patent.

19   Prior Order 7–8. Now this pattern is not only reflected in the SAC, but also in CEI's opposition.

20   CEI has specifically dedicated two pages to arguing that the Accused Product segments content

21   based on a trace route. *See* Opp'n 8–9. Yet those two pages consist almost entirely of paragraphs

22   quoted from Kollective's website, which were all included in the prior complaint, as well as

23   paragraphs quoted from the SAC. CEI submits only three sentences of explanation among these

24   two pages: "The asserted claims require segmentation based on a trace route . . . . [Kollective's]

25   white paper refers to the distribution network as a mesh that is based on a traceroute . . . .

26   Kollective admits to segmenting and distributing the content based on network conditions." *Id.* at

27   8. Notably absent from those three sentences is any allegation that, or explanation how, the

28   Case No.: 5:20-cv-07273-EJD
     ORDER GRANTING MOTION TO DISMISS

1   Accused Product segments content based on a trace route, no less any facts to support that

2   allegation.

3     **B.  Factual Allegations Inconsistent with Infringement Theory**

4     To the contrary, the SAC specifically alleges that the Accused Product "relies on

5   *conventional protocols* that segment video files."  SAC ¶ 35 (emphasis added).  Yet, segmenting

6   content based on a trace route is precisely the *unconventional* segmentation technique claimed in

7   the '452 Patent.  Indeed, upon appeal, the Federal Circuit specifically noted CEI's argument that

8   using a trace route to segment content "was not well-understood, routine, or conventional."

9   *Cooperative*, 50 F. 4th at 131 ("[A]llegations [in CEI's First Amended Complaint] mirror the

10   applicant's statements in the prosecution history and the patent's specification that using trace

11   routes in segmenting content was inventive and improves efficiency, redundancy, and reliability of

12   content delivery computer network systems.").

13     The Federal Circuit addressed a similar situation in *Bot M8 LLC v. Sony Corp. of Am.*, 4

14   F.4th 1342 (Fed. Cir. 2021).  In *Bot8*, the patent at issue generally describes an authentication

15   mechanism for video games, whereby both the game program and the authentication program

16   must be stored on the same memory board that is separate from the memory motherboard.  *Id.* at

17   1354.  However, the patent owner alleged that the accused product had the authentication

18   program, operating system, and games all stored on a flash drive located in the motherboard.  *Id.*

19   The court found that the complaint alleged away from infringement by asserting that the

20   authentication program is stored on the motherboard, which is inconsistent with the infringement

21   theory that requires the authentication program to be stored on a board separate from the

22   motherboard.  *Id.*  The court held that, where "the factual allegations are actually inconsistent with

23   and contradict infringement, they are [] insufficient to state a plausible claim."  *Id.*

24     So too here, by specifically alleging that the Accused Product relies on conventional

25   protocols to segment content, CEI has pled away from its theory that the Accused Product

26   infringes on the claimed unconventional method of segmenting content based on a trace route.  As

27   the Federal Circuit observed, "while a plaintiff's pleading obligations are not onerous, it is possible

28   Case No.: 5:20-cv-07273-EJD

ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

that, in pleading its claims, a plaintiff may find it has pleaded itself out of court." *Id.*

* * *

Because the SAC still fails to allege facts showing that the Accused Product segments content based on a trace route, and instead includes facts that contradict its own infringement theory, the Court finds that CEI has once again failed to allege facts sufficient to plead a claim of patent infringement.  As such, the Court finds it unnecessary to reach Kollective's remaining arguments.  Kollective's motion to dismiss is therefore **GRANTED** without leave to amend.  Given that CEI was unable to cure the deficiencies identified in the Court's Prior Order, the Court finds that further amendment would be futile.  *See Lopez*, 203 F.3d at 1127 ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

## IV.    CONCLUSION

For the foregoing reasons,  the Court **GRANTS** Kollective's motion to dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated: February 5, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-07273-EJD
ORDER GRANTING MOTION TO DISMISS

9